· ASSOCIATED INDUSTRIES OF MASSACHUSETTS, INC. *vs*
COMMISSIONER OF INSURANCE & another.[1]

Suffolk. May 4, 1988. — July 19, 1988.

Present: HENNESSEY, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Insurance*, Rating, Workmen's Compensation insurance, Commissioner of
Insurance. *Practice, Civil*, Review of decision of Commissioner of In-
surance. *Administrative Law*, Hearing, Evidence, Judicial review. *Sta-
tute*, Construction. *Due Process of Law*, Rate setting. *Evidence*, Ad-
ministrative proceeding.

The Commissioner of Insurance, having conducted a full evidentiary hearing
on a proposed workers' compensation insurance rate increase and deter-
mined that the filing did not, in some respects, comport with statutory
standards, was not precluded by either the applicable language of G. L.
c. 152, § 53A (7), or the procedures prescribed by 211 Code Mass.
Regs. § 110.04 (4) (1986), from permitting a refiling with appropriate
modifications without requiring a duplicative full evidentiary hearing on
all issues raised by the filing. [39-41]

A party to a full evidentiary hearing on a general workers' compensation in-
surance rate filing who had fully participated in some thirty-three days
of hearings was not denied due process rights by a decision of the
Commissioner of Insurance allowing a refiling which prevented the
parties from further discovery or the cross-examination of witnesses
during a public hearing on the refiling; nor was a full hearing on the
refiling required by 211 Code Mass. Regs. §§ 110.07 (2) (a) and 110.08
(9) (1986) in light of other regulatory provisions specifically granting
the commissioner discretion in limiting the presentation of evidence
during a hearing. [42]

In proceedings involving approval of increased workers' compensation in-
surance rates in which a decision of the Commissioner of Insurance
identified certain areas in which an initial rate filing was unreasonable
and recommended specific alterations that would remedy the defects on
refiling, the commissioner's subsequent decision approving a rate in-
crease was not inadequate because it lacked findings and merely con-
tained a conclusory ruling that the refiling complied with his recom-

[1] The Workers' Compensation Rating and Inspection Bureau of Massachu-
setts, intervener.

mendations, where the refiling was directly responsive to the earlier decision; nor was the commissioner required in his subsequent decision to address explicitly why the rate increase was not excessive, where all components of the rate calculation had earlier been deemed reasonable by the commissioner. [42-43]

In proceedings involving approval of a requested increase in the rates which employers pay for workers' compensation insurance, the Commissioner of Insurance properly interpreted G. L. c. 152, § 53A (8), to empower him to order a prospective rate decrease in certain circumstances, to be effective six months from the date of the filing, but to prevent him from ordering a retroactive decrease in past rates for alleged past overpayments. [43-45]

In an action for judicial review of a decision by the Commissioner of Insurance involving approval of increased workers' compensation insurance rates, no showing was made that the officer who presided over the hearings on the rate filing demonstrated a bias that would have warranted his recusal. [45-46]

In proceedings involving approval of a requested increase in workers' compensation insurance rates, findings by the Commissioner of Insurance concerning the approval of the loss development methodology chosen by the Workers' Compensation Rating and Inspection Bureau [47]; the bureau's use of a computer simulation model [47]; the healing period durations used in analyzing St. 1985, c. 572, benefit changes [48]; and the approval of the bureau's trend methodology [48-49], were both reasonable and supported by substantial evidence in the record.

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on September 10, 1987, and January 7, 1988, respectively.

The cases were reported by *Liacos*, J.

*Kenneth A. Behar* for the plaintiff.

*Acheson H. Callaghan, Jr.* (*Victor Bass* with him) for Workers' Compensation Rating and Inspection Bureau of Massachusetts, intervener.

*Carolyn V. Wood*, Assistant Attorney General, for the Commissioner of Insurance.

NOLAN, J. These two consolidated cases are before us on reservation and report by a single justice of this court. In each case, the plaintiff, Associated Industries of Massachusetts, Inc. (AIM), filed a petition pursuant to G. L. c. 152, § 53A (10)

(1986 ed.), for review of a decision by the Commissioner of Insurance (commissioner) involving approval of workers' compensation rates.

In the first decision, dated August 20, 1987, the commissioner rejected a February 23, 1987, rate filing submitted by the Workers' Compensation Rating and Inspection Bureau of Massachusetts (WCRB) in which WCRB sought a 31.5% increase in the rates which employers pay for workers' compensation insurance. The commissioner also ruled that he was without authority to order a retroactive premium decrease sought by AIM under G. L. c. 152, § 53A (8) (1986 ed.). In the second decision, dated December 31, 1987, the commissioner approved an increase of 19.9% to be effective January 1, 1988.

1. *Refiling procedure.* On August 20, 1987, the commissioner adopted the presiding officer's decision which rejected portions of the WCRB's February 23, 1987, general rate filing as unreasonable and directed the WCRB to make certain changes which would facilitate approval of a rate request upon refiling. On November 16, 1987, WCRB refiled and proposed a 19.9% rate increase. After a public hearing, the commissioner approved WCRB's submission.

On appeal, AIM requests that we reverse the commissioner's decision that approved the November rate proposal. AIM asserts that the commissioner erred by permitting the WCRB to submit a "refiling" and by restricting the scope of the subsequent hearing. AIM claims that neither the applicable statutes nor the commissioner's own regulations authorize a refiling procedure and that the abbreviated hearing violated its statutory and due process rights.[2] Accordingly, AIM takes the position

---

[2] AIM also contends that the commissioner exceeded his authority and improperly fixed rates by providing the WCRB with refiling guidelines. See *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, 391 Mass. 238, 245 (1984) (commissioner's authority limited to approving or disapproving rates). AIM's reliance on our recent decision in *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 48 (1988), is misplaced. There we noted that "[a] rate may be fixed where its elements are settled and where all that remains to be done is to combine those elements by the employment of a definite rule, or as here by mathema-

that the WCRB's November 16, 1987, filing constituted a separate, general rate filing, and as such, entitled AIM to a full evidentiary hearing on all issues raised by that filing request. We decline to rule that the commissioner erred in allowing the WCRB to refile or in placing limits on the ensuing hearing.

We begin by elaborating on the procedural history of the February, 1987, rate filing. Pursuant to G. L. c. 152, § 53A (2), the commissioner conducted a hearing on the WCRB's February, 1987, rate filing. AIM, as an intervener in that proceeding, participated during the thirty-three days of hearings by presenting its own expert witnesses, by questioning witnesses produced by other parties, and by taking full advantage of its discovery rights. At the conclusion of the proceedings, the commissioner issued a 116-page decision that addressed the merits of all procedural and substantive issues raised during the hearing.

In his decision, the commissioner determined that the February filing did not, in some respects, comport with statutory standards. The commissioner did, however, conclude that certain modifications to the filing could bring it into compliance with the statute. Accordingly, the commissioner instructed the WCRB to make specific methodological changes and recalculations to gain final approval of its rate increase request upon refiling.

The WCRB subsequently refiled and the commissioner issued a "Notice of Request for Public Comment and Notice of Hearing," in which he indicated that the scope of the hearing would be limited to analyzing whether the refiling incorporated the recommended changes in the areas in which the February filing was found to be unreasonable. The commissioner invited all interested parties to comment, both orally and in writing, on the WCRB's compliance in this regard and on the reasonable-

tical process." *Id.* quoting *Century Cab, Inc.* v. *Commissioner of Ins.*, 327 Mass. 652, 660 (1951). The commissioner's suggested modification to the methodologies developed and proposed by the WCRB in this case did not amount to an independent fixing and establishing of workers' compensation rates.

ness of the factors used to update the suggested rates to reflect the passage of time since the proposed effective date of the February filing. The commissioner informed the parties that the hearing on the November filing would not involve further discovery or the cross-examination of witnesses. After a hearing was conducted, the commissioner approved the modified rate filing.

a. *G. L. c. 152, § 53A.* General Laws c. 152, § 53A (7), states in pertinent part: "If said commissioner disapproves proposed premiums and classifications, stating his reasons for disapproval, any insurance company or rating organization may file new proposed classifications and premiums."

AIM focuses on the word "new" in § 53A (7) in arguing that the WCRB's November 16 refiling was distinct from the February 23 filing and therefore should have been subject to all procedural requirements for a general rate filing. We disagree. Subsection 7 does not, in our opinion, mandate that the November refiling be reviewed in a vacuum. In fact, such an interpretation would defeat the legislative purpose behind G. L. c. 152, § 53A (1986 ed.), that of reviewing and approving appropriate workers' compensation rates in an expeditious manner. It would be nearly impossible for the commissioner to fulfil his statutory obligations if each modified filing was treated as an original general filing in which all issues must be addressed ab initio by way of duplicative evidentiary hearings. Accordingly, we decline to adopt AIM'S interpretation of § 53A (7).

b. *Regulations.* Contrary to AIM's assertions, the commissioner's recently adopted regulations also permit a modified filing. Pursuant to 211 Code Mass. Regs. § 110.04 (4) (1986), a rating organization may "resubmit" a rate filing with appropriate modifications after its original filing has been rejected for noncompliance with applicable laws or the procedures and forms prescribed by the regulations. Clearly, the provision is not by its terms limited to rejections based on procedure and form, but rather the regulation authorizes a rejection and resubmission designed to bring the filing into compliance with existing statutory standards. Thus, the commissioner's decision to allow WCRB to refile is consistent with his own regulations.

c. *Evidentiary hearing*. We are not swayed by AIM's contention that the refiling procedure violated its due process rights and that it was entitled to a full hearing on the refiling. Assuming, arguendo, that AIM has a protected property interest, there is no constitutional right to a specific kind of hearing or in further hearings on matters already determined by the commissioner. See *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 542 (1985). Here, AIM fully participated in the thirty-three days of hearings on the February filing and was given the opportunity to submit written evidence and oral argument on whether the refiling complied with the directives contained in the August 20, 1987, decision. No more was required.

AIM also directs our attention to regulations which provide for discovery and cross-examination of witnesses during hearings. 211 Code Mass. Regs. §§ 110.07 (2) (a) and 110.08 (9) (1986). AIM contends that, based on these regulations, it is entitled to a full hearing on the November filing. These regulations are silent, however, as to the procedures to be followed in the event of a refiling after a complete evidentiary hearing.

AIM chooses to ignore other regulatory provisions that specifically grant the commissioner discretion in limiting the presentation of evidence during a hearing. Title 211 Code Mass. Regs. § 110.07 (2) (b) (1986) provides that a presiding officer may order "limitations on scope, method, time and place of discovery." Title 211 Code Mass. Regs. § 110.08 (8) (1986) states that "[t]he presiding officer may exclude testimony or evidence which he determines to be unduly repetitious or to have an unreasonable dilatory effect upon the hearing process." Therefore, the commissioner's regulations authorize the presiding officer to control the structure of a hearing in order to promote the fulfilment of his statutory duties. Unless the commissioner's interpretation of his own regulations is "patently wrong, unreasonable, arbitrary, whimsical, or capricious," this court will not substitute its judgment for that of the commissioner. *Brookline* v. *Commissioner of the Dep't of Envtl. Quality Eng'g*, 398 Mass. 404, 414 (1986).

d. *The December 31, 1987, decision*. AIM requests that the court reverse the commissioner's December 31, 1987, decision

approving the 19.9% rate increase alleging that the decision lacked findings and merely contained a conclusory ruling that the November filing complied with the August 20, 1987, decision. AIM further contends that the December decision should have addressed explicitly why the 19.9% rate increase was not excessive due to the cumulative effect of changes incorporated as a result of the August decision. AIM's arguments are not meritorious.

In his August decision, the commissioner identified six areas in which the February rate filing was unreasonable and recommended specific alterations that would remedy the defects. Once satisfied that his recommendations had been adopted, the commissioner approved the resulting rate proposal with little further discussion. Where the WCRB's revised rates were directly responsive to the August decision, the commissioner was not obligated to recite, once again, his findings regarding the areas in which the previous filing had been unacceptable.

Nor was the commissioner required to address explicitly why the 19.9% rate increase figure was not excessive. Where, as here, all the components of the rate calculation have been deemed reasonable by the commissioner, it is only logical that the resulting per cent increase falls within the range of reasonableness required by the statute. We have previously rejected similar arguments that the whole is not necessarily equal to the sum of its parts. *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 381 Mass. 592, 601 (1980).

2. *G. L. c. 152, § 53A (8).* AIM included in its advisory filings an application for an order directing a decrease in already effective premiums for policies in effect between January 24, 1983, and October 1, 1986. In support of its request, AIM cited G. L. c. 152, § 53A (8), which provides: "If, after the conclusion of a hearing on classification and premiums pursuant to subsection (2), the commissioner of insurance determines that any already effective premium is excessive, he shall order a specific decrease in that premium to be effective six months from the date of the insurance company or rating organization filing under consideration. He shall order a specific decrease

irrespective of whether any insurance company or rating organi-
zation has filed for a decrease in any premium rate."

In 1985, amendments to G. L. c. 152 relieved insurers from
sustaining the cost of certain payments for supplemental ben-
efits in death and permanent total disability cases. St. 1985,
c. 572 (c. 572). AIM asserted that the premiums paid by
employers to insurers from January 24, 1983, through October
1, 1986, reflected increases for anticipated payments of supple-
mental benefits projected after the statutory amendments went
into effect. In its application, AIM requested that the commis-
sioner order that each employer receive a credit equal to the
per cent increase in 1983-1986 premiums attributable to the
projected benefit payments. The commissioner ruled: "In my
view, the purpose of this proceeding is to review the WCRB's
projections of costs for a future period and determine whether
those projections and the manner in which the costs are allo-
cated to risks meet the statutory standard. Even though G. L.
c. 152, § 53A (8), allows me to order a decrease in rates if I
should find that future rates should be lowered from present
levels, it does not allow me to order a retroactive decrease in
past rates. In my opinion, the AIM's request is for a retroactive
premium decrease, which I may not grant. Accordingly, the
AIM's application is denied."

Although the commissioner's interpretation is not binding
on us, it is entitled to some weight, and the consistent adminis-
trative construction of a statute permitting more than one pos-
sible interpretation is of added significance. *Metropolitan Prop-
erty & Liab. Ins. Co.* v. *Commissioner of Ins.*, 382 Mass.
514, 523 (1981). AIM insists that, because the language of
§ 53A (8) empowers the commissioner to order a decrease in
"any already effective premium" determined to be "excessive,"
the commissioner has the power to order a credit rebate equal
to the portion of the rates paid between 1983 and 1986 that
reflected the projected benefit payments cancelled by the 1985
amendments. On the other hand, WCRB and the commissioner
argue that because there is no express statutory authorization
in § 53A (8) for a retroactive adjustment, the requested rebate
may not be lawfully awarded.

We have noted that insurance rate making is essentially prospective in nature. *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. 282, 294 (1987). As a matter of law, retroactive adjustments to prior approved rates may not be awarded absent specific statutory authorization. See *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 45 (1979); *Boston Edison Co.* v. *Department of Pub. Utils.*, 375 Mass. 1, 50, cert. denied, 439 U.S. 921 (1978); *Metropolitan Dist. Comm'n* v. *Department of Pub. Utils.*, 352 Mass. 18, 26 (1967). We agree with the commissioner's decision that his authority under § 53A (8) is limited to ordering prospective decreases. Even in this respect, however, we note that the traditional authority of the commissioner only to approve or disapprove a rate filing has been expanded to include the power, in certain circumstances, to order a specific rate decrease. Nonetheless, we are of the opinion that the statute is intended to provide relief only in situations where an insurer files for a rate increase and the commissioner determines that not only is an increase unwarranted, but that the current rates in effect are excessive. Section 58A (8) empowers the commissioner to order a prospective rate decrease in these circumstances, to be effective six months from the date of the filing. The statute does not authorize the commissioner to order the kind of rebate sought by AIM for alleged past overpayments.

3. *The presiding officer's affidavit.* On December 16, 1987, the officer designated by the commissioner to preside over the hearings executed an affidavit in connection with AIM's motion for partial summary judgment.[3] The final paragraph of the affidavit stated: "No general rate increase has been allowed workers' compensation insurers since January 1, 1983. Should no rate relief be granted to workers' compensation insurers in the foreseeable future, it is likely that workers' compensation insurers will respond by refusing to provide workers' compensation insurance coverage in the State. This would precipitate an insurance crisis with potential far-reaching ramifications."

---

[3] The affidavit, however, was not filed in the county court.

On December 23, 1987, AIM filed with the division of insurance a motion requesting that the presiding officer recuse himself. The motion was denied. AIM claims that the comments contained in the affidavit evidenced the presiding officer's bias which disposed him toward granting the WCRB a rate increase.

By the time the affidavit was executed, the presiding officer and each of the parties had participated in thirty-three days of comprehensive hearings. The hearing resulted in a detailed decision encompassing each of the substantive areas at issue in the rate proceedings. Although the magnitude of the ultimate rate increase was not yet determined, the August 20 decision reveals that a rate increase under § 53A was indeed forthcoming.[4]

Proof of bias requires a showing that the hearing was not fair and impartial. *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. 282, 298 (1987). AIM has made no such showing. Moreover, the presiding officer's decision was reviewed and approved independently by the commissioner and AIM makes no allegation that the commissioner's decision was affected by bias. The denial of AIM's motion to recuse was without error.

4. *Evidentiary issues.* AIM challenges the commissioner's findings concerning four evidentiary issues raised at the hearings: (a) the approval of the WCRB's loss development methodology; (b) the use of a computer simulation model; (c) the healing period durations used in analyzing c. 572 benefit changes; and (d) the approval of the WCRB's trend methodology. We find that each of the challenges lacks merit, and therefore, approve the decision of the commissioner.

Before a rate filing may be approved, the commissioner must determine that the rate is not excessive, inadequate, or unfairly discriminatory and that it falls within a range of reasonableness. G. L. c. 152, § 53A (2) and (7). In reviewing a deci-

---

[4] However, the WCRB's initial request for a 31.5 % increase was rejected by the officer, as were subsequent WCRB filings, before the 19.9 % increase was ultimately approved. This fact belies AIM's contention that the officer was improperly disposed to provide immediate rate relief to the WCRB.

sion of the commissioner, the court must be satisfied that the commissioner's findings were reasonable and supported by substantial evidence in the record. *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, 391 Mass. 238, 244 (1984). Where, as in each of the four issues here, AIM's proposed methodology and evidence were considered by the commissioner and rejected in favor of the methods and evidence introduced by the WCRB, we do not substitute our judgment for that of the commissioner. See *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 389 Mass. 824, 844 (1983).

a. AIM asserts that there was no substantial evidence from which the commissioner could properly find that the WCRB's loss development method was reasonable. Moreover, AIM claims that the "paid" development methodology devised by its experts was superior to the WCRB's "incurred" loss development methodology and should, therefore, have been the method ordered and adopted by the commissioner. The short answer to this question is that evidence supporting each method was presented to, and analyzed by, the commissioner. The commissioner found that, although both the WCRB's and AIM's loss development methods contained flaws, the WCRB's approach was within an acceptable range of reasonableness, while AIM's method was not. His ruling was founded on substantial evidence in the record, as set forth in his decision. It is important, however, for both parties to bear in mind in future rate proceedings, the commissioner's suggestion that the best possible method would likely combine the strong points of both the paid and incurred loss development approaches.

b. AIM's claim that the commissioner erroneously approved the WCRB's computer simulation model is without merit. The WCRB introduced a computer simulation of workers' compensation benefits to determine the benefit changes under c. 572. After hearing expert testimony, the commissioner concluded that a properly constructed simulation model was a "clear advance" over the traditional model advanced by AIM. The commissioner declined to find the model unreasonable and adopted it for use in the proceedings. However, the commissioner criti-

cized the WCRB's conduct in delaying delivery of the completed simulation model to AIM for testing and analysis.[5] He found, nonetheless, that AIM did have enough time to test the model when it was eventually disclosed. Although we do not approve of the WCRB's failure to provide promptly the simulation model for testing, we decline to reverse the commissioner's reasonable adoption of the model based on the evidence presented at the hearing.

c. The presiding officer was presented with two estimates concerning the effects of c. 572 on the length of the healing period[6] for permanent partial injury claims. The WCRB's estimate was based on recent Massachusetts statistics, while AIM's estimates were calculated using more recent national data. The commissioner was presented with expert testimony which supported the decision to use the WCRB's updated State data in evaluating the effects of statutory changes on benefits connected to Massachusetts losses. The testimony indicated that, in Massachusetts, healing period durations for major permanent partial disability cases are significantly longer than the healing period durations in other States, rendering the use of data from other States inappropriate for analyzing Massachusetts workers' compensation cost issues. The commissioner reasonably chose to rely on the WCRB's Massachusetts data and reject the national statistics advanced by AIM.

d. Finally, AIM complains that the commissioner failed to make adequate findings or state reasons why the trend[7] methodology offered by the WCRB was adopted by the commissioner. AIM also argues that the commissioner's approval of the trend methodology was not supported by substantial evi-

---

[5] It is worth noting that, while the commissioner allowed all parties to submit a supplemental advisory filing on the simulation model, AIM chose not to avail itself of this additional opportunity to analyze and critique the model.

[6] The "healing period" is the period after injury when total disability benefits are paid to the claimant.

[7] "Trend" refers to the projection of losses and premiums from recent policy and calendar year levels to the levels expected to prevail during the period for which rates are set.

dence. AIM would have us review exclusively the commissioner's December 31 decision for findings supporting the commissioner's ruling. For the reasons set forth at the beginning of this opinion, however, our review is not limited to the December decision. Rather, we look to both the August 20 and the December 31 orders to determine whether the commissioner's decision was based on reasonable findings backed by substantial evidence.

The commissioner included a comprehensive discussion of trending methods in his August decision. He provided a lengthy analysis of the trend method offered by the WCRB, as well as the objections made by AIM regarding the flaws in the WCRB's method. In addition, the commissioner outlined the trend method introduced by AIM's experts. After weighing the evidence, the commissioner concluded that one aspect (the use of weighted regressions) of the WCRB's proposed trending method was unreasonable. However, he declined to find that AIM's method was a reasonable alternative. In accordance with the commissioner's August decision, the WCRB amended its November filing to omit any use of weighted trending.

In his December decision, the commissioner stated that the WCRB had followed his directives in the areas in which the rate filing had previously been unreasonable, and approved the filing. We will not consider separately the December 31 decision for the purpose of reviewing the commissioner's approval of the WCRB's trend method. In his August decision, the Commissioner provided ample findings supported by the evidence approving all but one aspect of the trending method introduced by the WCRB. Once the method was modified by removing the weighted regressions from the filing in compliance with the August decision, the commissioner was within his authority to adopt the methodology in his December decision, without the need for a duplicate recital of his analysis.

Judgment shall enter in the county court affirming the commissioner's December 31, 1987, decision on all contested matters.

*So ordered.*