PHILIP MALONE & another[1] vs. CIVIL SERVICE
COMMISSION & another.[2]

No. 94-P-817.

Suffolk. November 22, 1994. - February 15, 1995.

Present: ARMSTRONG, KASS, & GILLERMAN, JJ.

*Civil Service*, Decision of Civil Service Commission, Judicial review, Fire
fighters. *Practice, Civil*, Review respecting civil service. *Administrative
Law*, Judicial review.

A complaint brought pursuant to G. L. c. 249, § 4, in the nature of certio-
rari, to review a decision of the Civil Service Commission should have
been dismissed where it was filed more than sixty days after the deci-
sion of which review was sought. [151]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 1, 1992.

The case was heard by *J. Harold Flannery*, J.

*James F. Lamond* for the plaintiffs.

*Judy A. Levenson*, Assistant Attorney General, for the
defendants.

GILLERMAN, J. Twin brothers, Philip and Paul Malone, be-
gan their service as Boston firefighters in 1978.[3] It was not

---

[1]Paul Malone.

[2]Department of Personnel Administration.

[3]In 1975, the Malones first sought, unsuccessfully, appointments as Bos-
ton firefighters; their application stated that their race was "White." They
applied again in 1977, and their 1977 applications stated that their race
was "Black." In 1977, appointments of firefighters to the Boston fire de-
partment were subject to a Federal consent decree entered in 1975 in *Cas-
tro* v. *Beecher*, C.A. No. 72-3060-F (D. Mass). Under the consent decree,
the personnel administrator certified minority and nonminority candidate
lists for firefighter vacancies. Based on their 1977 application, in which the
Malones inserted their newly-discovered racial heritage, they were certified
as minority candidates and were appointed Boston firefighters in 1978. The
Malones had scored substantially lower than the lowest score of any

until 1988 that the commissioner of the Boston fire department (the department) informed the personnel administrator (the administrator) that he had reason to believe that the brothers had falsely claimed minority status on their applications for appointment to the department. See note 3, *supra.*

A hearing officer appointed by the administrator held a two-day evidentiary hearing and concluded that the Malones did not qualify as "black" under established criteria.[4] She also concluded that the Malones had wilfully and falsely identified themselves as black in order to receive appointments to the department.

The administrator adopted the findings of fact of the hearing officer and notified the city of Boston that it should cease paying compensation to the Malones. See G. L. c. 31, § 73. The Malones then filed a writ of mandamus in the Supreme Judicial Court for Suffolk County to review the administrative decisions. See *ibid.* The single justice concluded substantial evidence existed to support the findings of the hearing officer that the Malones had claimed minority status in bad faith, and he affirmed the decision of the administrator on July 25, 1989.[5]

Two and one-half years after the decision of the single justice, the Malones' counsel, Attorney James F. Lamond, by

nonminority candidate who was certified for appointment, and would not have been appointed firefighters,. based on their 1977 examination, had they identified their race as "White."

[4]The hearing officer applied the following criteria: (i) visual observation of physical features; (ii) documentary evidence establishing black ancestry, such as birth certificates; and (iii) evidence that the Malones or their families held themselves out to be black and are considered black in the community. She concluded that the Malones had failed conspicuously to establish any of the three criteria. The single justice, on appeal to the Supreme Judicial Court, held that these tests were "workable one[s] for determining a claim of racial identity."

[5]The single justice wrote that birth certificates established the white racial identity of the Malones for three generations. He added, "Against this evidence, the only indication of black ancestry offered by the Malones was the questionable and inconclusive photograph of a woman they claimed to be Sarah Carroll, their maternal great-grandmother. The hearing officer and the personnel administrator simply did not credit the Malones' story that, having failed to gain appointment in 1975 as non-minority candidates, they discovered the existence of a black ancestor in 1976."

letter dated December 3, 1991, and directed to the administrator, sought to reopen the proceedings before the administrator.

Mr. Lamond's letter stated that the basis for this application was the alleged "bias and prejudice" of the hearing officer in finding a wilful misrepresentation by the Malones. More particularly, the letter asserted that the Malones had recently been informed that the hearing officer was a member of the Boston chapter of the National Association for the Advancement of Colored People (NAACP), which was the plaintiff in *Castro* v. *Beecher*, see note 3, *supra*. It follows, the Malones insist, that she was biased against them.

Mr. Lamond's letter also contained the allegation, based on an unidentified source, that the hearing officer was reported to have said to another applicant for the position of firefighter, "You may get by here to the letter of the law, but morally and ethically you don't qualify — and there will always be people like you that slip through the cracks of the system. Unfortunately, there is nothing I can do about it, and whether you lied or deliberately tried to deceive this department, you don't meet the intended spirit of the consent decree." The NAACP membership, coupled with that statement, the letter asserted, "demonstrates just the sort of bias and prejudice which should have required . . . [the hearing officer] to disqualify herself." None of these allegations was made under oath or supported by affidavit.

After the Malones were notified by general counsel to the administrator that the administrator did not have jurisdiction to reopen the proceedings, the Malones appealed from that decision to the Civil Service Commission (Commission), citing G. L. c. 31, § 2(*b*).[6] The appeal recited the (alleged) bias

---

[6]We note that the Malones did not elect to apply again to the Supreme Judicial Court under G. L. c. 31, § 73, the statute they relied on in their first appeal to the Supreme Judicial Court. Section 73 authorizes a petition for a writ of mandamus in the Supreme Judicial Court in cases (as here) involving the finding by the administrator that a person has been illegally appointed. General Laws c. 31, § 2(*b*), upon which the plaintiffs rely in this appeal, provides for appeals *to the Commission* from any decision by the administrator.

of the hearing officer and claimed that the failure to reopen the proceedings denied the Malones the opportunity for a fair hearing on their claim of minority status.

The administrator moved to dismiss the appeal. The thrust of the motion was the lack of jurisdiction to reopen the proceedings and the absence of any reason sufficient to justify that action. On February 19, 1992, the Commission allowed the administrator's motion to dismiss, and it dismissed the appeal without a hearing and without an opinion. On February 28, 1992, the Malones filed a motion for reconsideration, including a request for leave to file late their opposition to the administrator's motion to dismiss. The Commission denied the motion for reconsideration without an opinion on March 30, 1992.

On May 27, 1992, more than sixty days after the decision of the Commission of which the petition sought review, the Malones filed this complaint for extraordinary review under G. L. c. 249, § 4 (certiorari),[7] seeking (i) a review of the Commission's decision to dismiss the claim of bias and (ii) a declaration that the administrator has jurisdiction to reopen the proceedings to consider their claim of bias.[8]

The Malones moved for judgment on the pleadings or, in the alternative, summary judgment, because the administrative record before the court constituted the undisputed facts of the controversy. See Mass.R.Civ.P 12(c), 365 Mass. 756 (1974). The defendants filed a cross motion for judgment on the pleadings. A judge of the Superior Court, in a careful

---

[7]We note that G. L. c. 31, § 44, provides that any party aggrieved by the final order or decision of the commission *following a hearing* may institute proceedings for judicial review in the Superior Court within thirty days after receipt of such order or decision. The Malones have elected not to proceed under the provisions of § 44, and we shall assume, favorably to the Malones, that § 44 was not available to them, and that a complaint under G. L. c. 249, § 4, was their only route for judicial review. We note also that, if § 44 were available, the Malones failed to commence their action within thirty days after the Malones received notice of the Commission's decision.

[8]The petition was filed in the Supreme Judicial Court. That court remanded the petition to the Superior Court.

opinion of nine pages, reviewed the administrative record and affirmed the decisions of the Commission.

1. *Late application for judicial review.* The complaint should have been dismissed because it was not brought "within sixty days next after the proceeding complained of." G. L. c. 249, § 4, as amended by St. 1986, c. 95. The decision of the Commission of which complaint is made was dated February 19, 1992, and the complaint in this case was filed May 27, 1992, more than sixty days later. The motion for reconsideration did not extend the period within which the complaint could have been filed. See *Curley* v. *Lynn*, 408 Mass. 39, 41 (1990). The substantive decision of the Commission was to dismiss the appeal without opinion, and the Commission's denial of the motion for reconsideration on March 30, 1992, only repeated what the Commission had done on February 19, 1992. The sixty-day filing period had not expired when the Malones received the Commission's decision on or about March 30, 1992, but they chose not to file the complaint in this action until May 27, 1992.

It is highly unlikely that the Legislature intended that a party seeking extraordinary review by way of certiorari "should be able to restart the [statutory] period at will by simply petitioning for reconsideration or further hearing." *Curley* v. *Lynn, supra.* Certainly there is nothing in G. L. c. 249 that suggests or contemplates such a result. See *ibid.* Indeed, no administrative rule can modify the statutorily prescribed time limits for filing a complaint for certiorari. See *id.* at 41-42.[9]

2. *Substantive basis for review.* Even if the complaint had been filed in a timely fashion, we would affirm on the merits of the case. Judicial review under G. L. c. 249, § 4, is limited to correcting substantial errors of law that are apparent on the record. *Gloucester* v. *Civil Service Commn.*, 408 Mass.

---

[9]The defendants pleaded the statute of limitations as a defense, but did not move for dismissal of the complaint on that ground in the Superior Court. The failure to argue the point below is of no consequence. See *McLellan* v. *Commissioner of Correction*, 29 Mass. App. Ct. 933, 935 ((1990); *Pidge* v. *Superintendent, M.C.I., Cedar Junction*, 32 Mass. App. Ct. 14, 18 (1992).

292, 297 (1990). The record to be reviewed in this case is the decision of the administrator refusing to reopen the administrative proceedings and the affirmance of that decision by the commission.[10]

We assume, favorably to the Malones, that they are correct in arguing that there is no statutory or regulatory guidance regarding their request to reopen the administrative proceedings in order to provide a review of their claim that the hearing officer was biased (see note 7, *supra*). Thus they invoke *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700 (1985), where we held that the power to reopen administrative proceedings "is inherent in the administrative process and needs no specific authorization by statute or regulation." *Id.* at 705.[11] We have also said that "the power to do so must be sparingly used . . . ." *Stowe* v. *Bologna*, 32 Mass. App. Ct. 612, 616 (1992). Relevant to the "anterior question" — *whether* to exercise the power to reopen — is "the degree of care or haste in making the earlier decision, and the general equities of each problem." *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. at 706, quoting from Davis, Administrative Law Text § 18.09, at 370 (3d ed. 1972).

There is nothing in the record before us to suggest any undue haste in the administrator's decision declining to reopen the proceedings or in the Commission's decision allowing the administrator's motion to dismiss (or in the Commission's reconsideration of that motion). More important, and decisive in this case, is our assessment of the "general equities" of the problem as expressed in Mr. Lamond's letter of December 3, 1991.

We find nothing in the December 3 letter upon which to rest the extraordinary decision to reopen the administrative

---

[10]The earlier administrative record culminating in the Commission's substantive decision was reviewed by the Supreme Judicial Court, and no further review of that record is available.

[11]*Aronson* v. *Brookline Rent Control Bd.* involved a possible fraud on the Brookline rent control board, but in that case we indicated that occasions for such relief were not necessarily limited to cases involving fraud. 19 Mass. App. Ct. at 704 n.10.

proceedings in this case. The substance of Mr. Lamond's letter is merely this: the hearing officer was a member of the NAACP, and some unidentified person is reported by Mr. Lamond to have said that the hearing officer made some challenging remarks to another firefighter in whose favor she nevertheless found.

The argument for recusal is totally lacking in merit. Where such an argument rests on the claim of bias toward a litigant, there must be "a showing that the hearing was not fair and impartial." *Associated Indus. of Mass., Inc.* v. *Commissioner of Ins.*, 403 Mass. 37, 46 (1988). See also *Harris* v. *Trustees of State Colleges*, 405 Mass. 515, 527 (1989) (noting that art. 29 of the Massachusetts Declaration of Rights requires that judges be "as free, impartial and independent as the lot of humanity will admit" and that, while judges should be sensitive to those instances where their impartiality might be questioned, "[n]ot every contention of bias or partiality is entitled to be honored by a judge, or a hearing officer").

Mr. Lamond's letter is barren of any suggestion that the hearing officer was either unfair or not impartial to the Malones at any time during the course of the proceedings before her. It is noteworthy that — at least in the record before us — no claim regarding the hearing officer's bias or hostility toward the Malones appears to have been asserted at any time during the hearings before the hearing officer, the administrator, the Commission, or the single justice in the prior proceedings. On direct appeal to the Supreme Judicial Court, the Malones did argue "bias" but, as noted by the single justice, only regarding the claim that a single agency should not be permitted to function as prosecutor, hearing officer, and final decision maker.

The claim of bias was first raised almost two and one-half years after the decision of the Supreme Judicial Court — a delay so substantial[12] as to suggest strongly that neither the Malones nor their counsel perceived any partiality in the

---

[12]A motion for relief from judgment based on newly discovered evidence — the thrust of the claim made in these proceedings — must be presented

conduct of the hearing officer when their sensitivity to unfairness would likely be at a peak: during the hearings. Compare *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 14 (1993) (failure of counsel to object at trial "is a sign that what was said sounded less exciting at trial than appellate counsel now would have it seem"). Neither is there any suggestion in the record before us, or in the Malones' brief, that there is any sound reason to believe that a new hearing would result in different findings of fact with regard to the conduct of the Malones. See note 5, *supra.*

The assertion that membership in the NAACP is a reliable indicator of the hearing officer's bias toward the Malones lacks plausibility on its face, and mistaking the hearing officer's principled decision in a separate case involving another firefighter for bias suggests that the bias, if there is any, lies elsewhere. In short, the factual allegations against the hearing officer, even if true, have no probative value.

Accordingly, for the reasons stated in part 1 of this opinion, the judgment is vacated; a new judgment is to enter dismissing the complaint.

*So ordered.*

---

no later than one year after the entry of judgment. See Mass.R.Civ.P. 60(b)(2), 365 Mass. 828 (1974).