## Automobile Insurers Bureau of Massachusetts vs. Commissioner of Insurance.

Suffolk. May 7, 1997. - June 18, 1997.

Present: Wilkins, C.J., Abrams, Lynch, O'Connor, Greaney, & Fried, JJ.

*Insurance,* Motor vehicle insurance, Rate setting. *Administrative Law,* Rate setting. *Statute,* Construction.

The Commissioner of Insurance has authority, pursuant to the reconciliation provisions of G. L. c. 175, § 113B, to make a future adjustment to automobile insurance rates, to account for premium overpayments of more than $176 million for the period from 1991 through 1996, in order to maintain the mandated revenue neutrality of the safe driver insurance plan (SDIP), where the rates charged in those years were, due to an error in settling the SDIP rates, in violation of the statutory mandate and where the adjustment was a correction of the error. [266-269]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on January 31, 1997.

The case was reported by *Abrams,* J.

*E. Michael Sloman* (*Michael B. Meyer* with him) for the plaintiff.

*Thomas O. Bean,* Assistant Attorney General, for the Commissioner of Insurance.

Abrams, J. The Automobile Insurers Bureau (AIB) appeals from a decision by the Commissioner of Insurance (commissioner) fixing private passenger automobile insurance rates. In doing so, the commissioner made an adjustment that accounts for premium overpayments of $176.4 million from 1991 through 1996. The AIB asserts that the commissioner's proposed rate adjustment lacks statutory authorization. The commissioner responds that her adjustment is authorized by the safe driver insurance plan (SDIP) established pursuant to G. L. c. 175, § 113B, which authorizes her to take measures necessary to *maintain the* revenue neutrality of the SDIP. The AIB filed its complaint in the Supreme Judicial Court for Suffolk County. A single justice reported the case without decision to

the full court. We conclude that the commissioner's decision is authorized by the statute directing the commissioner to maintain revenue neutrality in the SDIP.[1]

General Laws c. 175, § 113B, requires the commissioner to fix and establish "adequate, just, reasonable and nondiscriminatory" rates for private passenger automobile insurance. In accordance with G. L. c. 175E, § 5, the commissioner held a public hearing commencing on August 9, 1996, for the purpose of setting proper rates to be effective on and after January 1, 1997. See G. L. c. 175, § 113B. Interested parties were invited to participate in the administrative proceedings on the different components of the rate setting process: the underwriting profit provisions; the cost containment provisions; the main rate issues of the loss, expense and commission allowances; and the SDIP.

Four parties intervened, including the Attorney General, the State rating bureau (SRB), and the AIB. Most of the issues were resolved through a series of stipulations agreed to by the parties. Only two issues remained contested: the SDIP and the calculation of the commission expense allowance.[2] This appeal addresses the commissioner's proposed reconciliation of the SDIP.[3]

The SDIP is a redistributive plan designed to avoid making safe drivers subsidize less safe drivers. Insurance companies administer the plan by giving credits or imposing surcharges to the premiums of insured drivers.[4] The plan works by assigning a safety level rating to each driver based on the driver's traffic violations and at-fault accidents. The steps range from step 9, the theoretically safest driver, to step 35, the theoretically highest risk driver. A step 15 driver is considered to be the "neutral" driver, meaning that drivers over step 15 pay a surcharge, while drivers under step 15 receive a credit.

---

[1]Absent legislative intervention, our interpretation of G. L. c. 175, § 113B, will apply to the 1998 and 1999 rates.

[2]The issue regarding the commission expense allowance was argued separately in Massachusetts Ass'n of Ins. Agents vs. Commissioner of Ins., SJC-07398.

[3]Today we also decide an as-applied appeal by Trust Insurance Company from the commissioner's decision. See Trust Ins. Co. v. Commissioner of Ins., post 1001 (1997).

[4]The Legislature has provided for the establishment of the SDIP in G. L. c. 175, § 113B (lines 150-262).

A SDIP reconciliation is a part of the annual rate setting scheme in order to ensure that the effect of the plan remains revenue neutral.[5] To achieve that objective, the commissioner first estimates the total amount of credits and surcharges anticipated each year, based on the expected distribution of drivers in each SDIP step. However, because the total credits allowed have regularly exceeded the total surcharges imposed, an "implicit surcharge" has been incorporated annually into the base rate, paid by every insured, in order to generate sufficient revenues to keep the SDIP revenue neutral.

The SRB recommended a rate adjustment for 1997 through the annual SDIP reconciliation process to rectify an error made in calculating the company expense allowance component of the private passenger insurance rates for years 1991 through 1996. The adjustment proposed to refund $176,435,511 overpaid to insurers.

The excessive premiums were collected as a result of the data source used to calculate company expenses, which did not accurately reflect the aggregate premium adjustments attributable to the SDIP.[6] More specifically, the Massachusetts private passenger statistical plan was used to determine company expenses. The data from the statistical plan summarized premium charges as though all drivers were at the neutral step 15, ignoring SDIP credits and surcharges.[7] The aggregate of step 15 premiums is considerably larger than the aggregate of actual premiums earned by the insurers, larger by the exact amount by which SDIP explicit credits exceed explicit surcharges. This imbalance in the SDIP caused rates

---

[5]It is possible to maintain revenue neutrality within the SDIP as a self-contained system. The authority for this reconciliation is found in G. L. c. 175, § 113B (lines 233-236), which reads: "[T]he plan shall be designed so that the decrease in aggregate premiums attributable to the downward adjustments within the plan equals the increase in aggregate premiums attributable to the upward adjustments in the plan."

[6]The expense allowance is a function of earned premium. Because the earned premium amount was erroneously overstated, the expense allowance was overstated as well, causing the rates to be set too high and excessive premiums to be collected.

[7]Using the data from the Massachusetts private passenger statistical plan from 1991 through 1996 was error. The data should have come from the annual statements, which report aggregate premiums earned by each insurance company, incorporating the step 15 premiums received as well as SDIP credits and explicit surcharges.

to be set too high, overcharging policyholders by $176.4 million.[8]

At the rate hearing, the SRB argued to the commissioner that the SDIP reconciliation process could be utilized to return the money to insureds. The commissioner adopted a variation of the SRB's proposal and adjusted 1997 rates to offset the excessive premiums received by the industry between 1991 and 1996.[9] The AIB contends that the commissioner's decision to implement the rate adjustment to correct for the error is unlawful because the rate adjustment is not authorized by statute and, in the absence of statutory authority, such an adjustment, or prospective correction for past miscalculations, is not allowable.

The AIB first argues that the commissioner's plan to adjust the rates for 1997, 1998, and 1999 is based only on faulty "expense allowances" and "not the SDIP." The AIB asserts that § 113B (lines 234-235) expressly confines any reconciliation based on the SDIP to monies "within the plan" and that the commissioner's adjustment to premium levels falls outside of the plan. The AIB warns that, if we accept the commissioner's reasoning, any miscalculation in rates could be retroactively addressed by stating that the SDIP was involved. We agree with the AIB that such a result would thwart the legislative scheme and would undermine the integrity of the ratemaking process. However, contrary to the AIB's argument, the error here was directly attributable to the failure to reflect properly a portion of the premiums collected specifically as a result of the SDIP.

The implicit surcharges from the SDIP (which caused the overstatement of expense allowances) are reflected in the basic premium rates charged. The funds charged as implicit surcharges are "within the plan" because those charges are a direct result of seeking to maintain revenue neutrality. The commissioner's decision, therefore, was linked directly to the error in using the premiums reported in the statistical plan. The commissioner noted succinctly and accurately in her brief that, "if there had been no SDIP, there would have been no error."

The second part of the AIB's argument is that, even if the

[8] The AIB does not contest this amount.

[9] The commissioner's plan is to phase in the $176.4 million adjustment by refunding 40% of that amount in 1997, 40% in 1998, and 20% in 1999.

error was within the SDIP, G. L. c. 175, § 113B, does not authorize the commissioner's use of the SDIP reconciliation process to justify the rate adjustments. The AIB argues that, while it may be permissible to adjust rates on an annual basis to account retroactively for the prior year's actual results and to maintain revenue neutrality within the SDIP, a macro-adjustment for the entire six-year period is beyond the scope of the commissioner's authority under the statute.

We agree in principle with the AIB's assertion that, as a matter of statutory construction, the commissioner generally is not authorized to engage in retroactive ratemaking. *Associated Indus. of Mass., Inc.* v. *Commissioner of Ins.*, 403 Mass. 37, 45 (1988). We repeat: "Insurance rate making is essentially prospective in nature. Massachusetts law no longer makes provision for a 'second look' at the rates and does not provide for a rebate to the insurers or to the policyholders if past rate predictions ultimately turn out to be wrong." *Massachusetts Auto. Rating & Acc. Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. 282, 284 (1987).

We articulated the policy behind the prohibition on retroactive ratemaking in *Attorney Gen.* v. *Commissioner of Ins.*, 370 Mass. 791, 824 (1976). In that case, we stated: "Rates frequently miss their target for the given year but prove more accurate over the longer term; the public would be disserved by constant tinkering with the rates to meet a tight standard of accuracy in each year. So also yearly adjustments to compensate for adverse experience might blunt efforts to encourage efficient and economical operation by the insurers." The commissioner in this instance is not "tinkering" with a faulty "past rate prediction." Rather, the commissioner, relying on statutory language, is endeavoring to follow the legislative intent to keep the effect of the SDIP program revenue neutral.

The change being proposed by the commissioner here mirrors the action that we approved in *Attorney Gen.* v. *Commissioner of Ins.*, 403 Mass. 370 (1988). In that case, we concluded that the commissioner's action to adjust the underwriting profit allowance retroactively was permissible because the initial rates charged were in violation of the statutory mandates. In that case, there was a failure to consider certain evidence which meant that the rates were not "adequate and reasonable as required by G. L. c. 175, § 113B."

*Id.* at 375. We determined that a correction of that error did not constitute a "second look" that violated the prohibition on retroactivity. *Id.* The gain to insurers here was not based on lower expenses than anticipated, but rather on a mistake in the expense allowance resulting from the improper use of data.[10]

The Legislature intended that corrective action be taken in this special circumstance. "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated. . . . Where the [legislative] intent is clear, the statute, if reasonably possible, must be construed to carry out that intent." (Citations omitted.) *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975). "The legislative intent is to be ascertained from the statute as a whole, giving to every section, clause and word such force and effect as are reasonably practical to the end that . . . the statute will constitute a consistent and harmonious whole, capable of producing a rational result consonant with common sense and sound judgment. . . . 'The act is to be interpreted in the light of its purpose and, so far as may be, to promote the accomplishment of its beneficent design.' " (Citations omitted.) *Neff* v. *Commissioner of the Dep't of Indus. Accidents*, 421 Mass. 70, 73 (1995), quoting *Young* v. *Duncan*, 218 Mass. 346, 349 (1914).

Reading both the relevant lines of the statute and the statute as a whole, we think that the Legislature intended the SDIP to be a redistributive revenue neutral entity. The language requiring a plan designed with "upward" and "downward adjustments" in "aggregate premiums" signifies an intent on the part of the Legislature to keep the effect of the plan revenue neutral. The commissioner's current pro-

---

[10]The AIB also contends that, even though the use of premium data from the statistical plan was not appropriate, all parties agreed to the use of that data. The AIB further highlights that, although the use of an inappropriate number led to a flawed methodology, the numbers used within that methodology were computed correctly. The commissioner has the duty under the statutory mandate of setting adequate, just, reasonable, and nondiscriminatory rates.

posal is similar in objective to the retroactive reconciliation that must be made on an annual basis to balance the SDIP.

The annual reconciliation process to maintain revenue neutrality within the SDIP often requires that the commissioner go back for up to four years to determine the appropriate amount of credits and surcharges as a result of delayed rulings by the Board of Appeals on Motor Vehicle Liability Policies and Bonds concerning certain motor vehicle accidents. While the commissioner's plan looks somewhat further back, the intended result is the same: a revenue neutral SDIP.

The AIB also has raised the issue that those insurance companies that are collecting reduced premiums and those policyholders receiving the benefits of the adjustment to the rate scheme are not entirely the same as those who were benefited or hurt, respectively, between 1991 and 1996. We have addressed a similar issue before in the context of a policy endorsement attached to all 1971 policies permitting retroactive rate corrections. See *Employers' Commercial Union Ins. Co.* v. *Commissioner of Ins.*, 362 Mass. 34, 42 (1972) (challenge to prospective correction for past excess premiums on the ground that the payors and recipients would not be identical to those benefited or harmed by the excessive premium charges rejected).

Rather than being a refund for excessive profits generated and authorized by a specific statutory mandate, the case at bar involves a commissioner's action taken in response to an error involving the SDIP. As such, the error is correctable under the provisions of the SDIP authorizing reconciliation to maintain revenue neutrality. Despite some difference in the source of the excess monies received by the industry, the course of action by the commissioner in this limited circumstance is appropriate, particularly when we take into account "the substantial savings in time and expense accomplished by distribution of past excess [monies received] by means of adjusting current rates downward, as opposed to rebate payments to individual policyholders." *Employers' Commercial Union Ins. Co.*, *supra* at 42.

The commissioner's plan is authorized by the statute. We remand the case to the Supreme Judicial Court for Suffolk

County for entry of a judgment declaring that the rates fixed and established by the commissioner are authorized by lines 233-236 in the safe drivers insurance plan.

*So ordered.*