## Thomas Beach *vs.* Commerce Insurance Company.

No. 06-P-859.

Norfolk. February 8, 2007. - August 14, 2007.

Present: Gelinas, McHugh, & Katzmann, JJ.

*Insurance,* Settlement of claim, Motor vehicle insurance. *Motor Vehicle,* Insurance.

Discussion of the safe driver insurance plan set forth in G. L. c. 175, § 113B. [722-724]

In a civil action brought by an insured against the issuer of his motor vehicle insurance policy, claiming unfair settlement practices under G. L. c. 176D, § 3, after the insurer imposed a mandatory surcharge against the insured's daughter following personal injuries the insured received when struck by a motor vehicle his daughter was driving, the judge properly granted summary judgment in favor of the insurer, where the imposition of a surcharge, without more, did not make the insurer's liability so clear as to require it to make a reasonable offer of settlement, and where the safe driver insurance plan set forth in G. L. c. 175, § 113B, which mandated the surcharge, did not replace the injured party's traditional burden of proof. [724-726]

Civil action commenced in the Superior Court Department on December 18, 2001.

The case was heard by *Mitchell J. Sikora, Jr.,* J., on a motion for summary judgment.

*Joseph M. Burke* for the plaintiff.

*Peter A. Palmer* for the defendant.

McHugh, J. From a summary judgment dismissing his claim for unfair settlement practices, see G. L. c. 176D, § 3, against Commerce Insurance Company (Commerce), the plaintiff, Thomas Beach (Beach), appeals. Beach was injured when struck by a car that his daughter, Kiyomi Beach (Kiyomi), was driving. He claims that Commerce was required to offer him a reasonable settlement for his injuries because it issued an "at-fault" notice to Kiyomi pursuant to regulations implementing the Safe

Driver Insurance Plan (SDIP or Plan) contained in G. L. c. 175, § 113B. We affirm.

1. *Facts and procedural background.* The undisputed facts, as described in the motion judge's comprehensive memorandum of decision, are as follows. On December 31, 1998, after eating in a Scituate restaurant, Beach gave the keys to his manual transmission sport utility vehicle (SUV) to Kiyomi, then unlicensed and two months shy of her sixteenth birthday, and asked her to start it for him. As he left the restaurant, Beach noticed that Kiyomi was having difficulty starting the vehicle. As he walked in front of the SUV en route to the driver's side door so that he could provide assistance, the vehicle "jumped" forward, pinning him against a wall. Beach survived but was severely injured.

Beach and the SUV were insured under an automobile policy Commerce had issued. Because Kiyomi was unlicensed, the policy did not list her as an additional insured. On January 29, 1999, Commerce notified the Merit Rating Board (MRB) of the accident, identified Kiyomi as the operator and Beach as the policyholder, and assessed a surcharge against Kiyomi. The notice explained that the surcharge was based on a regulatory presumption that the operator of a vehicle in a single-vehicle collision is more than fifty percent at fault.

On February 5, 1999, Commerce, after realizing that it could not surcharge an unlicensed driver, sent a notice revoking the surcharge. In the notice, Commerce said that it was revoking the surcharge because the "at-fault accident was applied to the driving record of the wrong person." About two weeks later, on February 17, 1999, Commerce interviewed Beach and Kiyomi about the circumstances surrounding the accident.

On October 20, 1999, Beach added Kiyomi, now a licensed driver, to his Commerce policy. Five days later, Beach received an SDIP statement from Commerce. The statement identified Kiyomi as a driver and showed that she had been surcharged for a "Major Accident" that had occurred on December 31, 1998.[1] The surcharge date was January 29, 1999.

---

[1] Neither party explains why, in light of Commerce's revocation of the surcharge, Kiyomi's SDIP statement showed a surcharge for a "Major Accident."

On December 31, 2001, Beach sued Kiyomi to recover for the injuries he had received in the accident. He dismissed that suit on June 6, 2002.[2] Beach then sent Commerce, which to that point had made no offer of compensation for Beach's injuries, a demand letter under G. L. c. 93A, § 9(3), alleging that Commerce had failed in several ways to comply with G. L. c. 176D, § 3, the statute governing claim and settlement practices by insurers. In the letter, Beach demanded $250,000 in damages. Commerce denied liability and claimed that Beach was responsible for his own injuries.

Beach then sued Commerce, alleging that Commerce had committed a breach of its statutory duty under G. L. c. 176D, § 3(9)(*f*), by failing to make a reasonable settlement offer, and that the breach constituted an unfair and deceptive business practice under G. L. c. 93A. On March 31, 2005, a judge of the Superior Court granted Commerce's motion for summary judgment. This appeal followed.

In the Superior Court and here, Beach succinctly stated the essence of his claim against Commerce as follows:

> "Reduced to its simplest terms . . . an insurance company which [under the Safe Driver Insurance Plan] . . . merit rates the motor vehicle operator in a single car accident must make a reasonable offer to settle the claims of a person who was injured as a result of that accident."[3]

That novel claim fundamentally misapprehends the nature and function of the SDIP and the merit-rating process it embodies.

2. *The SDIP.* The SDIP is set forth in G. L. c. 175, § 113B, and is governed by regulations set out in 211 Code Mass. Regs.

---

[2]The record does not reflect the reason for the dismissal, other than to designate that it was by stipulation, see Mass. R. Civ. P. 41(a), 365 Mass. 803 (1974), nor does it reveal whether Commerce had been notified that the action was pending.

[3]Indeed, Beach argues that the facts surrounding the accident are "not relevant" to the obligations of Commerce after it has made a surcharge assessment. As Beach puts it, "[t]he underlying facts are not relevant to the issue of whether the driver is at fault for [the damages Beach suffered in the accident] nor are they relevant to the obligation to engage in good faith settlement negotiations, as the surcharge of Kiyomi Beach by Commerce is tantamount to an admission that she was more than 50% at fault for the accident."

§§ 134.00 et seq. (1996).[4] The Plan is part of a revenue-neutral regulatory scheme designed to promote safe driving by rewarding careful drivers and penalizing those who are careless. It does so through an efficient, though sometimes imprecise, system that applies rebuttable presumptions of fault to certain categories of accidents. More often than not, the presumptions assign fault accurately but, as is true of any system that relies on categorical judgments, there are cases where applying the presumption would lead to an injustice. For those cases, the SDIP provides an appellate procedure. See G. L. c. 175, § 113P; *Nercessian* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 46 Mass. App. Ct. 766 (1999).

A brief review of the Plan's highlights places the presumptions and the appellate procedure in an appropriate context. The SDIP applies to all privately owned passenger vehicles. See 211 Code Mass. Regs. § 134.04(1). Under the Plan, insurance companies are required to report to the MRB all "At Fault Accidents" resulting in a claim for more than $500. See 211 Code Mass. Regs. §§ 134.04(3), 134.05 (1996). Failure to do so can result in a fine of up to $500. See 211 Code Mass. Regs. § 134.19 (1996). "At Fault Accidents" are accidents "involving a vehicle subject to the Safe Driver Insurance Plan wherein the Involved Operator was more than 50% at fault, *as determined by the application of the Standards of Fault of the Board of Appeal*" (emphasis added). 211 Code Mass. Regs. § 92.02 (1993). Those standards, which do not define "fault" or equate it with negligence, are found in 211 Code Mass. Regs. § 74.04 (1995). The standard that led to the surcharge in this case is set forth in 211 Code Mass. Regs. § 74.04(19), which provides that "[t]he operator of a vehicle subject to the Safe Driver Insurance Plan shall be presumed to be more than 50% at fault when operating the only vehicle involved in a collision."

Under the Plan, the presumptions of fault listed in 211 Code Mass. Regs. § 74.04 are "determinative unless and until the operator overcomes the presumption by producing sufficient evidence at an initial review or hearing held in accordance with

---

[4]We cite to the regulations in effect at the time the surcharge issued on January 29, 1999.

the rules of the Board." 211 Code Mass. Regs. § 74.03 (1995). When an insurance company reports an "At Fault Accident" to the MRB, the MRB posts a "Surchargeable Incident for the At Fault Accident" to the operator's MRB account. See 211 Code Mass. Regs. § 134.10(2) (1996). This posting is known as "merit rating" a driver.

Insurers are required to obtain operator information from the MRB before issuing new or renewed automobile insurance policies. See 211 Code Mass. Regs. § 134.09 (1997). The insurer must adjust the premium upward or downward to take into account the MRB's operator information. See 211 Code Mass. Regs. § 92.09 (1993); 211 Code Mass. Regs. § 92.11 (1993); 211 Code Mass. Regs. § 134.12 (1998). Overall, however, gross upward and downward adjustments must combine to make the Plan revenue-neutral, i.e., upward premium adjustments for poor drivers must be offset by decreased premiums for good drivers. See G. L. c. 175, § 113B, as appearing in St. 2004, c. 213, § 1 ("The commissioner shall establish both the number of classifications, the size of the premium adjustments and initial classification assignment; but the plan shall be designed so that the decrease in aggregate premiums attributable to the downward adjustments within the plan equals the increase in aggregate premiums attributable to the upward adjustments in the plan"). See generally *DiLoreto* v. *Fireman's Fund Ins. Co.*, 383 Mass. 243, 247-248 (1981); *Automobile Insurers Bureau of Mass.* v. *Commissioner of Ins.*, 425 Mass. 262 (1997).[5]

3. *Discussion.* Turning now to the issues in this case, Beach's claim that an automobile insurer is required to make an offer of

---

[5]The plaintiff therefore misses the mark when he argues as follows:

> "Commerce benefits from [the SDIP] system. It is afforded the means to increase premiums when an operator engages in certain conduct. It utilizes this objective system of assessing fault to increase its revenues ostensibly to help offset the losses caused by such drivers. In the case before the bar, however, Commerce wants it both ways. It wants to utilize the SDIP to increase a premium, yet it does not want to pay for the effects of the very accident which it uses to impose a surcharge. This is unfair, and the way in which it [was] pursued by Commerce was deceptive."

As the statute reveals, increased SDIP revenues have nothing to do with creation of a pool to cover losses.

settlement to anyone injured in an accident that results in a surcharge to one of its insureds rests on three subsidiary claims, i.e., that the surcharge is an admission by Commerce, that the surcharge creates an estoppel, and that posting of the surcharge is res judicata and precludes any subsequent consideration of fault.

An evidentiary admission[6] is a party's out-of-court statement used against him or her at trial. See *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 603 (1984), quoting from Liacos, Massachusetts Evidence 275-276 (5th ed. 1981); *Mattoon* v. *Pittsfield*, 56 Mass. App. Ct. 124, 137 (2002). Given that broad definition, perhaps the notice qualifies. But the question then becomes "an admission of what?" Commerce's standardized and formulaic notice simply parroted the regulations, stating that "a determination has been made that the OPERATOR is more than 50% at fault" for the accident the notice described because "the operator of a vehicle subject to [the Plan] shall be presumed to be more than 50% at fault when operating the only vehicle involved in a collision." That explanation is an "admission" that Commerce knows what the regulation says; it is not an admission that Commerce has made any determination of fault. Accordingly, even if the notice qualifies as an admission, it does not advance Beach's claim against Commerce.

As for Beach's other subsidiary claims, the record is devoid of any change of position on his part that would give rise to an estoppel, see, e.g., *Transamerica Ins. Group* v. *Turner Constr. Co.*, 33 Mass. App. Ct. 446, 452 (1992), and, as no one ever contested the surcharge, there can be no res judicata or issue preclusion. Compare, e.g., *Almeida* v. *Travelers Ins. Co.*, 383 Mass. 226, 227-230 (1981).

More broadly, though, Beach's claim that imposition of a surcharge, without more, required Commerce to make a reasonable offer of settlement for Beach's injuries amounts to a claim that the SDIP is a comprehensive scheme for adjusting automobile personal injury claims and replaces the injured party's traditional burden of proof with a broad set of burden-

---

[6]We do not understand Beach's claim to be that the notice is a judicial admission. See, e.g., *Federico* v. *Ford Motor Co.*, 67 Mass. App. Ct. 454, 461 n.8 (2006).

shifting, regulatory presumptions.[7] Had the Legislature intended such far-reaching changes, we have little doubt that it would have announced them more clearly and forcefully, particularly given its heavy regulation of automobile insurance and its undoubted knowledge that automobile accident claims are frequently litigated. See generally *Ferullo's Case,* 331 Mass. 635, 637 (1954) ("Statutes are to be construed in the light of the preexisting common and statutory law . . . . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed"); *Ciardi* v. *F. Hoffmann-La Roche, Ltd.,* 436 Mass. 53, 60-61, 66-67 (2002). In the absence of such an announcement, we view the SDIP for what it is: an efficient, categorical, revenue-neutral mechanism that creates premium-based incentives to drive safely. So viewed, the Plan does not replace the traditional tort law applicable to automobile injuries, and Plan-mandated surcharge notices do not, without more, make an insurer's liability so clear that it must accompany those notices with an offer of settlement to injured parties.

*Judgment affirmed.*

---

[7]Perhaps not surprisingly, Beach points to no provision of the Commerce policy that supports the result he urges. Indeed, the record contains neither the policy nor any excerpts from it.