WILLIAM R. MOORE & others *vs.* ROBERT CATALDO & others.

Middlesex.    April 8, 1969. — July 1, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning*, Nursing home; Special permit; Board of appeals: notice of hearing.

A notice given by a zoning board of appeals stating that the board would hold a hearing on a petition "to construct and operate a nursing home on a parcel of land situated on . . . [specified streets] and shown on plan filed herewith" was sufficient under G. L. c. 40A, § 17, notwithstanding that the notice did not indicate the size of the building or the number of patients it would accommodate. [327]

Where both a town's zoning board of appeals and a judge of the Superior Court on appeal under G. L. c. 40A, § 21, made findings, prerequisites under the zoning by-law for granting a special permit pursuant to c. 40A, § 4, § 15, cl. 2, that "the public convenience and welfare . . . [would] be substantially served" by a nursing home for which a special permit was granted and that it would "not tend to impair the status of the neighborhood," the permit was not invalidated by absence of any finding that the nursing home would be "in harmony with the general purpose and intent" of the by-law. [328]

A conclusion that "the public convenience and welfare . . . [would] be substantially served" by a nursing home for which a special permit was granted by a town's zoning board of appeals was warranted by testimony by witnesses connected with certain hospitals used by residents of the town to the effect that a shortage of beds and overcrowding in the hospitals would be alleviated by the nursing home. [331]

BILL IN EQUITY filed in the Superior Court on June 20, 1967.

The suit was heard by *DeSaulnier, J.*

*Albert P. Zabin* for the plaintiffs.

*Harold E. Stevens* for Robert Cataldo & another.

*Donald E. Legro,* Town Counsel, for the Board of Appeals of Lexington, joined in a brief.

SPALDING, J.   The plaintiffs appeal from a final decree sustaining a decision of the board of appeals (board) of Lexington granting a special permit to two of the defendants.

The judge, who took a view of the area involved, made a report of material facts. The evidence is reported.

The defendant Ray Howland, Jr., on behalf of himself and his partner, the defendant Robert Cataldo, filed a petition with the board for permission to build and operate a nursing home on a parcel of land of eleven acres located on Bryant and Emerson roads.[1] This land, which is in a single family residential district, is bounded on the west by a development of garden apartments and on the south by a large, undeveloped tract of land belonging to the town of Arlington. On the north and east, the locus is bounded by a neighborhood of single family houses. All of the plaintiffs live in this neighborhood, but each lives at least 400 feet from the locus and 600 feet from the front of the proposed nursing home. This proposed building was to extend 300 feet in length and contain 160 beds.

After notice and a public hearing, the board granted a special permit to Howland to build and operate a nursing home, subject to certain terms and conditions. One of the permit's conditions was that "The building shall be so staffed as to qualify for Medicare patients." The plaintiffs appealed this decision to the Superior Court,[2] but the judge upheld the board's decision. The evidence introduced at trial will be further discussed in part 3 of this opinion.

1. The plaintiffs contend that the board's decision was void on the ground that the notice of the public hearing was inadequate. Notice "of the time and place of such hearing . . . and of the subject matter, sufficient for identification" must be published in a newspaper and be sent by mail to affected property owners. G. L. c. 40A, §§ 4 and 17. The failure to satisfy the provisions concerning notice ordinarily will make the board's action invalid and without effect. See *Rousseau* v. *Building Inspector of Framingham*, 349 Mass. 31, 37, and cases cited; *Gallagher* v. *Board of Appeals of*

---

[1] The other five defendants are the members of the board.

[2] Presumably the appeal is under the provisions of G. L. c. 40A, § 21, although the bill did not specifically mention that section. See *Lawrence* v. *Board of Appeals of Lynn*, 336 Mass. 87.

*Falmouth,* 351 Mass. 410, 414. We are of opinion, however, that the published notice, which stated that the board would hold a hearing on Howland's petition "to construct and operate a nursing home on a parcel of land situated on Bryant Road and Emerson Road and shown on plan filed herewith," was sufficient.

The dominant "design [of the zoning laws] is to stabilize property uses in the specified districts . . . and not to permit changes, exceptions or relaxations except after such full notice as shall enable all those interested to know what is projected and to have opportunity to protest." *Kane* v. *Board of Appeals of Medford,* 273 Mass. 97, 104. The plaintiffs contend that the notice was inadequate because it failed to indicate the size of the building and the number of patients it would accommodate. But this failure did not invalidate the notice. In *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649, the notice stated that the petition was for the "erection and maintenance of [a] garage." We held that the notice was sufficient and the permit for a garage to hold sixteen buses was valid, even though neither the notice nor the petition disclosed the size of the proposed garage. *Carson* v. *Board of Appeals of Lexington, supra,* at 653. The plaintiffs' reliance on *Kane* v. *Board of Appeals of Medford,* 273 Mass. 97, is misplaced, since there the defective notice contained no intimation of the use to which the proposed building was to be put. In contrast, the notice here clearly indicated that the proposed building would be used as a nursing home.

2. General Laws c. 40A, § 4, states, "A zoning ordinance or by-law may provide that exceptions may be allowed to the regulations and restrictions . . . . Such exceptions shall be in harmony with the general purpose and intent of the ordinance or by-law and may be subject to general or specific rules therein contained. The board of appeals . . . may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an excep-

tion." The board of appeals' has the power under G. L.
c. 40A, § 15, cl. 2, to hear and decide applications for such
special permits. Pursuant to these statutory provisions,
§ 5 of Lexington's zoning by-law authorizes a nursing home
to be conducted in a single residence district if the board
gives permission. Section 14 provides that the board may
grant such permission when in its judgment "the public
convenience and welfare will be substantially served and
where a requested permit will not tend to impair the status
of the neighborhood."

The plaintiffs suggest that the permit was invalid because
neither the decision of the board nor the judge established
under G. L. c. 40A, § 4, that the nursing home would be "in
harmony with the general purpose and intent" of the zoning
by-law. But this was not an application for a variance
under c. 40A, § 15, which imposes more stringent statutory
limitations. See *Lawrence* v. *Board of Appeals of Lynn*,
336 Mass. 87, 89–90. Rather, it was an application for a
special permit for an exception permitted under the by-law,
and the specific statutory conditions applicable to variances
need not be satisfied. *Todd* v. *Board of Appeals of Yarmouth*,
337 Mass. 162, 168. Both the board and the judge found
that "the public convenience and welfare will be substan-
tially served" and that the nursing home "will not tend to
impair the status of the neighborhood." These findings
satisfied the requirement of § 14 of the by-law and were
sufficient to support the granting of the permit. *Carson* v.
*Board of Appeals of Lexington*, 321 Mass. 649, 654.

3. The remaining issue is whether there was sufficient
evidence to support the judge's conclusion that the nursing
home would substantially serve the public welfare and con-
venience. The judge was under a duty to hear the matter
de novo and determine the correctness of the board's decision
upon the facts found by him. *Lawrence* v. *Board of Appeals
of Lynn*, 336 Mass. 87, 89. The defendants' position was
that the nursing home would provide additional beds for
nursing home patients with the result that some patients,
then in the over-crowded hospitals serving Lexington, could

be transferred to the home. The residents of Lexington, which has no hospital, use, among others, the Symmes Hospital in Arlington and the Waltham Hospital in Waltham. Lexington has three nursing homes with a combined bed capacity of 259, but only 154 of these are certified under Medicare for people at least sixty-five years old.

One Leslie, the assistant administrator of Symmes Hospital, estimated that about 25% of the hospital's patients were residents of Lexington. He testified that at times the hospital had attempted to discharge patients to nursing homes but had been unable to do so because there were no beds available. Accordingly, those patients remained in the hospital, with the result that other patients, who would otherwise have been admitted, could not enter the hospital. On cross-examination, Leslie stated that his opinion as to the shortage of beds would be changed if a proposed 200 bed extended care facility were to be built near the hospital. This qualification was on the assumption that there was to be such a facility, but the evidence on this point, which was exceedingly vague, failed to show that such a facility was being constructed.

Dr. Joseph, a surgeon, testified that he had practised in Lexington for eighteen years and that 80% of his patients came from that town. In response to a question whether in his experience there were sufficient beds in nursing homes to meet the requirements of his patients, he stated, "In my opinion there are not enough nursing beds, nursing home beds." Dr. Joseph further testified that in his experience as a surgeon at Symmes Hospital admissions to the hospital frequently had to be cancelled because patients could not be transferred from it to nursing homes. He added, "There isn't any room for these older patients to go to. That is what I am told all the time." The plaintiffs then moved that his entire answer be struck.

On cross-examination Dr. Joseph stated that within the last week he had cancelled six operations in Symmes Hospital because of a shortage of beds. He estimated that twenty-five to thirty patients were still in the hospital solely because

Moore v. Cataldo.

there were not enough nursing home beds for them. But he did not know what was the percentage of occupancy of the nursing homes in Lexington.

One Coleman, the chairman of the Board of Trustees of the Waltham Hospital, said that about 5% of the hospital's patients were from Lexington. He testified that the hospital has been a leader in the field of hospital-nursing home relationships, that the hospital had participated in a study which investigated the utilization of beds in nursing homes, and that he studied reports submitted to him on the utilization of such beds and had delivered speeches on the subject. Based on his experience, he concluded that there was a shortage in Lexington of nursing home beds approved by Medicare and also of nursing home beds for people less than sixty-five years old. On cross-examination, however, he answered affirmatively to a question whether his opinion was based "on things people have told you or reports that other people have made and that you have read."

A witness called by the plaintiffs, one Realin, the Public Health advisor for the Division of Hospital and Medical Facilities within the United States Public Health Service, said that a study which classified Arlington and Lexington together showed that there was no need for additional nursing home beds in that area. The study indicated that 451 beds existed for long term care and that only 404 were needed. But only 126 of the 451 beds were located in facilities which conformed to certain State standards of construction.

The plaintiffs argue that their motion to strike Dr. Joseph's testimony about the shortage of beds in Symmes Hospital and in the nursing homes should have been allowed because his statement, "That is what I am told all the time" indicated his testimony was based on hearsay. But the quoted phrase referred to only part of his answer, and this was struck. The judge properly ruled that the other part, which was based on his own experience with his own patients, could stand.

The plaintiffs also contend that Coleman's opinion should

have been struck because it was based solely on hearsay. It appears, despite his answer, that his conclusion that there was a shortage of nursing home beds in Lexington was at least partly based on his own personal knowledge and experience.[3]   We need not decide whether in view of his expertise on the subject his conclusions might rest in part on hearsay under the doctrine set forth in *Finnegan* v. *Fall River Gas Works Co.* 159 Mass. 311.   Even if we assume that the motion to strike this conclusion should have been allowed, there nevertheless was ample evidence for the judge to conclude that there was a shortage of nursing home beds and that the proposed nursing home therefore would substantially serve the public welfare and convenience.

*Decree affirmed.*

---

[3] At the time the motion to strike was made the judge made the following observation, which was not challenged.   "The Court has ruled that he qualifies as an expert, that he has sufficient background;   that all of these studies were done, as I understand it, under his supervision and the reports were made to him as Chairman of the Board of Trustees for the Waltham Hospital."