# United States Court of Appeals
## For the First Circuit

No. 15-2337

LAWRENCE MILLER,

Plaintiff, Appellant,

v.

TOWN OF WENHAM, Commonwealth of Massachusetts; JEREMY COFFEY,
Member of the Zoning Board of Appeals - Town of Wenham; ANTHONY
M. FEEHERRY, Member of the Zoning Board of Appeals - Town of
Wenham; SHAUN HUTCHINSON, Member of the Zoning Board of Appeals
- Town of Wenham; 110, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

Benjamin B. Tymann, with whom Tymann LLC - Law & Compliance
was on brief, for appellant.
Joseph A. Padolsky, with whom Douglas I. Louison and Louison,
Costello, Condon & Pfaff, LLP were on brief, for appellees Town of
Wenham, Jeremy Coffey, Anthony M. Feeherry, and Shaun Hutchinson.

August 10, 2016

**KAYATTA**, **Circuit Judge**.   Plaintiff Lawrence Miller challenges under both state and federal law the manner in which the Town of Wenham, Massachusetts (the "Town") has chosen not to prohibit a company named 110, Inc. from operating a substance abuse treatment facility on land that abuts Miller's residence.   After Miller filed this lawsuit in Massachusetts Superior Court, the defendants removed it to federal court, and then moved to dismiss Miller's complaint under Federal Rule of Civil Procedure 12(b)(6). The district court determined that the complaint failed to state a claim under 42 U.S.C. § 1983 for the deprivation of property without due process.   The court also dismissed one state law claim as moot, and remanded a remaining state law claim to state court. For the following reasons, we affirm the dismissal of the federal claim, vacate the determination that one state law claim is moot, and otherwise affirm the remand of the remaining state law claim to state court.

## I.  Background

Because this appeal is from a decision granting a motion to dismiss, we take as true the well-pleaded allegations as they appear in the complaint.   Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 780 (1st Cir. 2014).

Miller resides at 66 Topsfield Road in the Town of Wenham.   His property abuts property used by 110, Inc.   On that abutting property sits a single-family home with a carriage house.

- 2 -

Both properties are located within the Town's Residential District. According to Miller, under the Town's zoning by-laws, commercial facilities, multi-family housing, and lodging houses are not allowed, either by right or special permit, in the Residential District.

In the fall of 2013, 110, Inc. approached the Town Administrator and the Town Planner about opening a substance abuse treatment facility on the abutting property. 110, Inc. argued that it did not need to secure a special permit, variance, or any other discretionary approval from the Town to operate such a facility on the abutting property. Rather, it contended that its proposed use of the abutting property would be by right under the so-called Dover Amendment, Mass. Gen. Laws ch. 40A, § 3, ¶ 2, which provides preferential zoning treatment to religious and educational uses of land. 110, Inc. claimed that its proposed land use fell under the educational category and that it was, therefore, exempt from any Town board permitting process.

On November 17, 2013, the Town's lawyer informed the Town Administrator that he had accepted 110, Inc.'s assertion that the Dover Amendment applied to 110, Inc.'s proposed land use. Soon thereafter, a Town official informed 110, Inc. that it could open for business. The Town officials reached this decision without holding a public hearing and without informing Miller or any other Town resident.

At the end of April 2014, Miller observed that 110, Inc. was operating a substance abuse treatment facility named Cross Keys Retreat next door to his residence. Miller promptly filed with the Town's Building Inspector (who was also the Town's Zoning Enforcement Officer) a Request for Zoning Enforcement pursuant to Mass. Gen. Laws. ch. 40A, § 7, ¶ 1. Miller's request stated that the treatment facility was operating as a commercial operation that housed up to fourteen people at a time, and was therefore not compliant with the Town's zoning by-laws that restricted such land use in the Residential District. Miller supported his request with legal memoranda and other documentation arguing that the facility was not covered under the Dover Amendment and, even if it were, that it was still subject to reasonable restrictions that could be imposed by the Town after a public hearing. At bottom, Miller argued that the Town's unilateral, non-public approval of 110, Inc.'s use was unlawful.

On June 5, 2014, the Building Inspector held a public meeting to give interested parties an opportunity to be heard on the question of whether 110, Inc.'s operation was protected under the Dover Amendment. On July 2, 2014, after considering the oral statements and written submissions made by counsel for 110, Inc., Miller, and members of the public, the Building Inspector granted Miller's request to enforce the zoning ordinance against 110, Inc., finding that the facility was not an "educational use" under the

Dover Amendment or otherwise permitted by that statute or the Town's zoning by-laws. The Building Inspector therefore ordered the facility to cease operations, but stayed the order to allow 110, Inc. to appeal the decision to the Town's Zoning Board of Appeals ("ZBA").

110, Inc. responded by first filing a complaint in the U.S. District Court for the District of Massachusetts. In its complaint, 110, Inc. alleged that the Town, in addition to violating the Dover Amendment, had illegally discriminated against the facility's residents under the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.; the Americans with Disabilities Act ("ADA"), id. § 12101 et seq.; and Chapter 40A, section 3, of the Massachusetts General Laws. Compl. at 6-8, 110, Inc. v. Town of Wenham, No. 14-cv-13013 (D. Mass. July 16, 2014), ECF No. 1. In addition to seeking compensatory, declaratory, and punitive damages and relief, 110, Inc. also filed an "emergency motion" seeking an injunction barring the Town from interfering with 110, Inc.'s operation of the facility and enjoining the Town from requiring it to appeal the Building Inspector's decision to the ZBA. Motion for Emergency Injunctive Relief at 2, 110, Inc. v. Town of Wenham, No. 14-cv-13013 (D. Mass. July 16, 2014), ECF No. 3.

On July 29, 2014, the district court held a hearing in 110, Inc.'s case against the Town on the emergency motion and

decided to hold an expedited trial on the merits of 110, Inc.'s claims, which it set for September 3, 2014. A few days later, on August 1, 2014, 110, Inc. appealed the Building Inspector's decision to the ZBA. After holding a public hearing and considering numerous written submissions, the ZBA denied 110, Inc.'s appeal on September 3, 2014, agreeing with the Building Inspector that 110, Inc.'s use of the facility did not qualify as an "educational use" under the Dover Amendment.

At the request of the parties in 110, Inc.'s case against the Town, the court continued the September 3 trial date to the end of September. During this time, the Town and 110, Inc. entered into settlement discussions. On September 5, 110, Inc.'s counsel submitted a written request to both the Town Administrator and Building Inspector requesting a "reasonable accommodation" under the ADA and FHA. This request set no limitations on 110, Inc.'s proposed use of the property as a substance abuse treatment facility, except that it capped at fourteen the number of clients for whom 110, Inc. could provide services at any one time.

A few days later, on September 9, counsel for an investor in 110, Inc., who held title to the parcel on which the company operated, sent a demand letter to the Town Administrator, Town Counsel, and Special Town Counsel, claiming that the decisions by the Building Inspector and the ZBA had caused him financial loss and threatening to bring a separate lawsuit against the Town if it

did not allow the facility to continue its operations. On September 11, the Town relented, and the Building Inspector signed 110, Inc.'s "reasonable accommodation" request. This act, Miller alleges, was done on the advice of the Town's lawyers for the purpose of resolving the ongoing federal litigation brought by 110, Inc. and to avoid the further litigation that had been threatened by the owner of the abutting property. Neither the Town's receipt of 110, Inc.'s "reasonable accommodation" request nor the Building Inspector's decision to sign it were disclosed at the time to Miller or any member of the public.

Soon thereafter, on September 26, the Town and 110, Inc. entered into a Settlement Agreement resolving 110, Inc.'s lawsuit against the Town. The terms of the Agreement included (1) a $125,000 payment from the Town to 110, Inc., (2) an agreement that by virtue of a "reasonable accommodation" 110, Inc. could continue operating the facility in accordance with the limitations set forth in its September 5 request for a "reasonable accommodation," (3) an agreement that the abutting property "is exempt from any zoning restrictions that would interfere with" the services provided by the facility, (4) a promise from the Town that it would not "obstruct or impede in any way" the facility's operations, and (5) the withdrawal of the Building Inspector's Dover Amendment decision and an agreement that 110, Inc. could pursue Dover Amendment approval in the future. In the Agreement, the parties

also agreed that 110, Inc. would withdraw its appeal of the Building Inspector's Dover Amendment order and that the matter before the ZBA "is hereby dismissed." At this time, neither Miller nor any member of the public was informed of the Settlement Agreement, but they did learn that the Building Inspector had recently acceded to 110, Inc.'s position that the ADA and FHA called for accommodating 110, Inc.'s use under the zoning laws.

On October 10, Miller and another neighbor filed their own appeal to the ZBA, challenging the new position of the Building Inspector that 110, Inc.'s unrestricted use of the property was allowed as a reasonable accommodation under the FHA. On October 20, unaware of the provision in the Settlement Agreement that the Building Inspector's July 2 Dover Amendment decision be withdrawn and 110, Inc.'s appeal of that decision to the ZBA be dismissed, the ZBA filed its written decision affirming the Building Inspector's decision to reject 110, Inc.'s claim of use by right under the Dover Amendment.

Just over two weeks later, Miller learned of the existence of the Settlement Agreement after his counsel reviewed public records that the Town produced on November 6, 2014. In those records, the Town also disclosed a memo sent by the Building Inspector on October 23, 2014, to 110, Inc., Town Counsel, and a ZBA member, in which the Building Inspector stated that the Town's Board of Selectmen had ratified the Settlement Agreement on

October 7, 2014.  This ratification had not been publicly disclosed prior to November 6.

After holding several days of hearings and considering written submissions on Miller's challenge to the Building Inspector's acquiescence to 110, Inc.'s position under the FHA, and after learning of the Settlement Agreement, the ZBA ultimately upheld the Building Inspector's grant of a reasonable accommodation to 110, Inc., albeit with certain limitations and requirements on the facility's operation.  These limitations and requirements concerned aspects of the facility's operation such as the facility's admission criteria, security measures, hours of outdoor operations, screening and fencing plan, noise reduction plan, signage and parking, outdoor lighting, and liability insurance.

Miller then filed in state court the complaint that is the subject of this appeal.  In his complaint, Miller alleged four causes of action, including a federal procedural due process claim (Count II) and a claim for a declaratory judgment to annul the land use approvals contained in the Settlement Agreement (Count IV).  After the Town removed the case to federal court, the district court granted its motion to dismiss Miller's federal procedural due process claim and his state law declaratory judgment claim, and remanded to state court the remaining state law claim challenging the ZBA's decision under Mass. Gen. Laws ch. 40A, § 17

(Count I).[1]  The district court found that the procedural due process claim was not cognizable and that the declaratory judgment claim had been rendered moot by the June 2, 2015, decision of the ZBA.  We now consider Miller's appeal from the dismissal of these two claims.

## II.  Analysis

We review de novo a district court's dismissal of claims under Federal Rule of Civil Procedure 12(b)(6).  Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015).  In doing so, "we accept as true all well-pled facts alleged in the complaint and draw all reasonable inferences in [the plaintiff's] favor." Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 36 (1st Cir. 2013).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## A.  Procedural Due Process

Miller brings his sole federal claim by way of 42 U.S.C. § 1983.  To succeed, he must show:  (1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated his constitutional or federal statutory

---

[1] Prior to the district court's order on the Town's motion to dismiss, Miller had voluntarily dismissed Count III of the complaint alleging a violation of due process under Article X of the Massachusetts Declaration of Rights.

rights.  Chongris v. Bd. of Appeals, 811 F.2d 36, 40 (1st Cir. 1987).  In an effort to make such a showing, he alleges that in making three decisions under color of state law, the Town violated his rights under the Due Process Clause of the Fourteenth Amendment, which provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Those decisions were, in chronological order:  (1) the decision by several Town officials in November 2013 that 110, Inc.'s proposed use of the abutting property was an educational use under the Dover Amendment, and therefore lawful under the zoning ordinance; (2) the decision by the Building Inspector in September 2014 to accede to 110, Inc.'s claim that federal law required the Town to accommodate 110, Inc.'s desire to operate as intended; and (3) the decision by the Town to enter into the Settlement Agreement with 110, Inc., pursuant to which the Town agreed, in relevant substance, to recognize the lawfulness of 110, Inc.'s use of the property as a reasonable accommodation under federal law, and to make no effort to obstruct or impede 110, Inc.'s operation of the facility on the property.

The Town does not argue that any of those decisions were anything other than state action.  It does, however, contend that none of those decisions violated Miller's constitutional right to procedural due process.

To plead that the state violated his constitutional right to procedural due process, Miller "must allege facts which, if true, establish that [he] (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law."  Clukey v. Town of Camden, 717 F.3d 52, 54-55 (1st Cir. 2013).  Our inquiry, then, consists of examining whether and in what manner Miller had a constitutionally protected property interest relevant to his claim, whether and to what extent the Town deprived him of that interest, and whether the procedures provided him were sufficient.

"Property interests . . . are not created by the Constitution[,] [but] rather . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  So, we must look at applicable Massachusetts law to determine whether and to what extent "an entitlement grounded in state law exists, recognizing that 'the types of interests protected as property are varied and, as often as not, intangible, relating to the whole domain of social and economic fact.'" Clukey, 717 F.3d at 55 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)).

- 12 -

Massachusetts law allows municipalities to establish zoning ordinances. Mass. Gen. Laws ch. 40A, § 5, ¶ 1. The aim of such ordinances "is to stabilize property uses in the specified districts . . . and not to permit changes, exceptions or relaxations except after such full notice as shall enable all those interested to know what is projected and to have opportunity to protest." Moore v. Cataldo, 249 N.E.2d 578, 580 (Mass. 1969) (quoting Kane v. Bd. of Appeals of Medford, 173 N.E. 1, 3 (Mass. 1930)). The Town, in turn, has adopted a Zoning By-Law, which requires that "the use of all premises in the Town[] shall be in conformity with the provisions of the Zoning By-Law" and provides that "[n]o building, structure, or land shall be used for any purpose or in any manner other than is expressly permitted within the district in which such building, structure or land is located." Wenham, Mass. Zoning By-Law ("By-Law") § 1.4 (2014).

Massachusetts law also addresses the enforcement of zoning regulations. In the first instance, it charges an "officer or board" in each municipality (such as the Town's Building Inspector) "with the enforcement of the zoning ordinance or by-law." Mass. Gen. Laws ch. 40A, § 7, ¶ 1. Section 7 anticipates precisely what we have here: the failure of an officer (the Building Inspector) on his or her own initiative to enforce the law as a person (Miller) wishes it to be enforced. In such an instance, § 7 provides that a person may "request[] in writing"

- 13 -

that the officer enforce the law against another person.  Id.  If the officer fails to act on the request, he must notify the requesting party of the decision and "the reasons therefor," id., and the requesting party, if "aggrieved," may "appeal [that decision] to the permit granting authority as the zoning ordinance or by-law may provide," id. § 8.

Massachusetts law also allows the "permit granting authority" in each municipality to grant variances from applicable zoning laws, subject to certain conditions.  Id. § 10.  In addition, municipalities shall, in their zoning ordinances or by-laws, designate specific types of uses that shall only be permitted in certain districts upon the issuance of so-called "special permits."  Id. § 9, ¶ 1.  The "permit granting authority" is charged with issuing such permits after providing notice and a hearing to members of the public.  Id. §§ 9, 11.  Persons aggrieved by a decision of the "permit granting authority" may appeal to the land or superior court.  Id. § 17.

Finally, local zoning ordinances and by-laws must be construed in accordance with and subject to certain statewide laws, see id. § 5, ¶ 1, and, under the Supremacy Clause of the United States Constitution, federal law, U.S. Const., art. VI, cl. 2. Relevant here are the Dover Amendment, providing, in part, that local zoning ordinances or by-laws shall not prevent uses of land for religious or educational purposes when the land is owned by

- 14 -

certain entities, Mass. Gen. Laws ch. 40A, § 3, ¶ 2, and the provisions of the FHA and ADA, requiring the reasonable accommodation of certain uses of land by or for disabled persons. See 42 U.S.C. §§ 3601 et seq., §§ 12101 et seq.

Having thus summarized the applicable law, we ask next whether and to what extent that law creates an entitlement that qualifies as a constitutionally protected interest. See Clukey, 717 F.3d at 55. Oddly, Miller's briefs on appeal do not clearly identify precisely the property interest of which he claims to have been deprived. He makes passing reference to the "interest" of "abutters" and to "abutter property interests." He also cites to a federal district court case in which the property interest, under the applicable local and state law, was identified as "a property right in the protection of his own property against incompatible uses of adjacent property which devalue his property." Everett v. City of Tallahassee, 840 F. Supp. 1528, 1539 (N.D. Fla. 1992). Certainly, though, such a description is overstated. Property uses can easily change in many manners, even from one use by right to another, with adverse effects on the value of adjoining properties. No one can reasonably claim an entitlement to be immune to all such changes.

We could perhaps read Miller as raising a more nuanced claim: that Massachusetts law creates a property interest in securing enforcement of the zoning laws against currently unlawful

- 15 -

uses of property that harm him, and that the Town's decision to allow such uses by 110, Inc. deprived him of that interest without prior notice or an opportunity to be heard. But even if we did so construe Miller's claim, and even if we also assumed, without deciding, that such an interest is a constitutionally protected property interest, we would still find no due process violation. The Town never deprived Miller of any right to obtain enforcement of the zoning laws against 110, Inc. It did eventually decide not to take enforcement action itself in light of its view that 110, Inc.'s use was lawful. Miller himself, however, retained the ability to seek such enforcement on his own under the above-described remedial scheme provided by Massachusetts law. Miller was therefore not deprived of the right to have the zoning laws enforced against 110, Inc. He was deprived only of the ability to enlist the support of Town administrative officials in this effort. For three principal reasons, we find such a deprivation not to be the type of action that requires prior notice.

First, the language of the relevant statute--Mass. Gen. Laws ch. 40A, § 7, ¶ 1--only grants Miller the right to "request[]" that the Building Inspector take a particular position regarding the proposed or actual use of property. Granting Miller the right to make such a "request[]" implies that Miller has no right to demand or expect that the Building Inspector himself will take the enforcement action desired. See Town of Castle Rock v. Gonzales,

- 16 -

545 U.S. 748, 765-66 (2005) (statutory grant of right to request enforcement of restraining order cuts against contention that beneficiary of the order has a protected property interest in prosecutor initiating enforcement action).

Second, under Massachusetts law, town officials, at least those who do not sit on the "permit granting authority," have no power to grant any "special permit" to allow use of a structure that would otherwise violate the zoning ordinances or by-laws. See Mass. Gen. Laws ch. 40A, § 9. Rather, in this circumstance the Building Inspector's enforcement decision is limited to determining whether a proposed or actual use is allowed under the law. That decision, in turn, is reviewable by the "permit granting authority," id. § 8, which, in the Town and with respect to the claims in this case, is the ZBA, By-Law §§ 4.1, 4.2.3, 13.2.2 (conferring authority on the ZBA to grant "special permits" for non-exempt educational uses of land). The ZBA's decisions may then be reviewed by the state courts. See Mass. Gen. Laws ch. 40A, § 17. Thus, Miller had the right under this procedure to request enforcement by the Building Inspector, to state fully his position to the Building Inspector, to receive a written explanation of the reasons for the denial of that request, and to participate as a party in the administrative and judicial reviews of the ultimate question: Is 110, Inc.'s use of the abutting property lawful in the absence of a special permit?

Third, it would be impractical to treat the non-enforcement decisions of the Building Inspector as the type of decisions that must be preceded by notice and an opportunity to be heard. Quite literally, Wenham's Building Inspector daily makes hundreds of decisions--by default--not to assert that current uses of properties are unlawful. It is unrealistic to deem each of those decisions not to pursue enforcement action to be a potential deprivation of a property interest for which prior notice need be given. See Hudson v. Palmer, 468 U.S. 517, 531-32 (1984); Parratt v. Taylor, 451 U.S. 527, 539 (1981).

In sum, the property interest here, assuming one exists, is in having the ordinance or by-law enforced, not in having the Building Inspector pursue enforcement. Cf. Town of Castle Rock, 545 U.S. at 766. And no one deprived Miller of that interest without notice and an opportunity to be heard.

But, says Miller, Town officials and the Building Inspector did more than decide not to seek enforcement. Rather, he argues, by "granting" 110, Inc. a reasonable accommodation, they effectively gave 110, Inc. a special permit to do what it wants. The law is quite clear, though, that "special permits" can only be granted by the "permit granting authority," which in this case was the ZBA. Miller makes no claim that the actions of Town officials or the Building Inspector could bind the ZBA. Indeed, the ZBA's decision, while ultimately allowing 110, Inc.'s use of

- 18 -

the abutting property as a substance abuse treatment facility, imposed restrictions on such usage contrary to the terms of the Settlement Agreement.

Miller also argues that, by refusing to enforce the zoning ordinances and by-laws, and purportedly granting what Miller claims to be an invalid special permit, the Building Inspector shifted the burden of proof in the proceeding before the ZBA. For example, had the Building Inspector insisted that 110, Inc.'s use was unlawful unless it obtained a special permit from the ZBA, 110, Inc. would have had the burden to persuade all three members of the ZBA to grant it the permit. See Mass. Gen. Laws ch. 40A, § 9, ¶ 12. But, as a consequence of the Building Inspector's decision not to require 110, Inc. to obtain a special permit, Miller had to carry the burden of convincing a unanimous ZBA to reverse the Building Inspector's non-enforcement decision. Id. § 15, ¶ 4.[2]

We will assume (without deciding) that Miller is correct; i.e., that under Massachusetts law the Building Inspector's decision in favor of 110, Inc. meant that Miller had to persuade three rather than one ZBA member in order to prevail. So, in theory, the "interest" that Miller lost was a procedural

_____

[2] Indeed, this very argument highlights the fact that the ZBA, not the Building Inspector, was the final arbiter as to the lawfulness of 110, Inc.'s use of the property.

one that would have given him the potential advantage inherent in defending against rather than challenging a zoning decision. But the shifting allocation of such a procedural advantage under state law, while still leaving Miller with notice and a meaningful right to be heard by the permit granting authority, does not constitute a deprivation of a substantive interest protected by the Fourteenth Amendment. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983) (explaining that "[p]rocess is not an end in itself[,]" but that "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement"); Town of Castle Rock, 545 U.S. at 771 (Souter, J. concurring) ("[A] [s]tate [does not] create a property right merely by ordaining beneficial procedure unconnected to some articulable substantive guarantee.").

In sum, Miller has not been deprived of any constitutionally protected property interest without due process of law. He retained his right to initiate, receive notice of, and participate in a ZBA proceeding challenging 110, Inc.'s use of its property. While he lost the advantage of having the Building Inspector on his side, which may have shifted a greater burden of persuasion to him, we find that he had no property interest in having such an advantage. To rule otherwise would be to federalize all sorts of discretionary calls made by municipal officials even when applicable law does not render these calls binding or final.

## B.   Declaratory Judgment Count

The second claim Miller presses on appeal is his declaratory judgment count, which seeks to invalidate the September 26, 2014 Settlement Agreement between the Town and 110, Inc.  Finding that this claim had been rendered moot by the June 2, 2015 decision of the ZBA, the district court dismissed it without any further discussion.  Miller contests this ruling, arguing that the Settlement Agreement and ZBA decision have independent force and contain terms that are not coextensive.  The Town, while making a conclusory argument that the district court's mootness finding was correct, principally relies on its contention that Miller has failed to demonstrate standing under Mass. Gen. Laws ch. 40A, § 17, to bring this claim.

As explained above, the complaint in this case was originally filed in state court and was removed by the Town solely on the basis of Miller's federal procedural due process claim under § 1983.  Because we now affirm the district court's dismissal of that claim, we are left, as the district court was, with a complaint alleging two state-law claims.  The first state law claim (Count I) was brought under Mass. Gen. Laws ch. 40A, § 17 to challenge the ZBA's "reasonable accommodation" decision.  The second state law claim (Count IV) is the declaratory judgment count at issue.

On the basis of Miller's federal claim, the district court possessed "supplemental jurisdiction" over the remaining related state law claims. See 28 U.S.C. § 1367(a). When the court dismissed the only federal claim in the case, however, it was then required to "reassess its jurisdiction" by "engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on [whether it should retain jurisdiction or remand the case back to state court]." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998); see 28 U.S.C. § 1367(c)(3). These considerations include "the interests of fairness, judicial economy, convenience, and comity." Camelio, 137 F.3d at 672. We have said that when a federal claim upon which supplemental jurisdiction is based is dismissed early on in the litigation, "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over [the remaining state law claims]." Id. This balance promotes comity by avoiding needless federal decisions of state law while at the same time promoting fairness "by procuring for [the parties] a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

The correctness of the district court's decision finding Count IV moot is, in our view, a question that may depend on whether and to what degree the ZBA's decision nullified the Settlement Agreement entered into by other Town officials and

ratified by the Town's Board of Selectmen. These are questions of state law with which the state courts are more familiar. Furthermore, because the district court correctly decided to remand Miller's zoning challenge, little is saved by having the district court decide the mootness issue under state law. See Camelio, 137 F.3d at 672 (stating that "it does not appear that the district court's disposition of some but not all of the state law claims will materially shorten the time . . . to resolve the parties' dispute as the remanded claims concern the same nucleus of operative fact as the dismissed claims"). And, if not moot, Miller's claim for declaratory relief may also depend upon whether he has adequately pled standing under Massachusetts General Law Chapter 40A, as interpreted by the Massachusetts state courts.

All in all, we find no basis for deviating from the ordinary course of remanding Miller's state law declaratory judgment count. See id.; Desjardins v. Willard, 777 F.3d 43, 46 (1st Cir. 2015).

### III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal of the procedural due process claim but vacate its dismissal of the declaratory judgment claim. We direct the district court to remand what remains of this case to state court. Each party shall bear its own costs.

So ordered.