SUPREME JUDICIAL COURT 
 
 BAK REALTY, LLC, & another[1] vs. CITY OF FITCHBURG & another[2]

 
 Docket:
 SJC-13639
 
 
 Dates:
 December 2, 2024 – March 28, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Municipal Corporations, By-laws and ordinances. Zoning, Lodging house, Zoning district, Validity of by-law or ordinance, Board of appeals: decision, Appeal. Handicapped Persons. Lodging House. Statute, Construction. Practice, Civil, Zoning appeal, Summary judgment. Words, "Family," "And."
 
 

       Civil action commenced in the Superior
Court Department on January 31, 2020.
      The case was heard by Janet Kenton-Walker,
J., on a motion for summary judgment.
      The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.
      Kevin J. Powers (Vincent P. Pusateri, II,
also present) for the defendants.
      Andrew J. Tine for the plaintiffs.
      James S. Timmins, City Solicitor, &
Paul Kominers, for Massachusetts Municipal Lawyers Association, amicus curiae,
submitted a brief.
      Dana Alan Curhan, for city of Brockton
& others, amici curiae, submitted a brief.
      WOLOHOJIAN, J.  At issue is whether the city of Fitchburg's
zoning ordinances violate the antidisability discrimination provision of the
Zoning Act, G. L. c. 40A, § 3, fourth par. (§ 3, fourth par.),
as applied to a sober house that is being operated in a three-family house
located in the residential B (RB) district of Fitchburg (city or
Fitchburg).  The answer to this question
turns on a matter of statutory interpretation: 
namely, whether § 3, fourth par., requires that local ordinances
treat disabled persons living in congregate living arrangements not only as
"groups of similar size o[f[3]] other unrelated persons," but also as
"families" regardless of how that term is defined on the local level
(emphasis added).  We conclude that it
does not.  Instead, the statute entitles
disabled people to be treated the same as nondisabled people are treated under
local ordinances.  Thus, if a group of
disabled people living in a congregate living arrangement meets the definition
of "family" under the local regulations, then it is entitled to be
treated as such.  Likewise, it is
entitled to be treated as any similar-sized group of nondisabled unrelated
people is treated under the local regulations. 
Because the thirteen sober home residents in this case did not meet the
local definition of "family" and were treated for purposes of the
zoning code the same as any similar group of thirteen unrelated people living
together in a three-unit house in the RB district of Fitchburg, we agree with
the decision of the zoning board of appeals of Fitchburg (board) and
accordingly reverse the judgment of the Superior Court.[4]
      1. 
Background.  a.  Statutory and regulatory framework.  One year after Congress amended the Fair Housing
Act (FHA) to prohibit housing discrimination against "handicapped"
persons,[5] see Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102
Stat. 1619, 1620-1622 (1988) (adding 42 U.S.C. § 3604[f]); see also
Edmonds v. Oxford House, Inc., 514 U.S. 725, 728 & n.1 (1995), our
Legislature amended § 3 of the Zoning Act, G. L. c. 40A,
§§ 1 et seq., to do the same,[6] see St. 1989, c. 106, § 1
("An Act prohibiting housing discrimination against disabled
persons").  Section 3, fourth par.,
limits local zoning action by declaring that "[n]otwithstanding any
general or special law to the contrary, local land use and health and safety
laws, regulations, practices, ordinances, by-laws and decisions of a city or
town shall not discriminate against a disabled person."  G. L. c. 40A, § 3, fourth
par.  Although the statute provides no
definition of "disabled person," the parties do not dispute –- and we
agree with -- the Appeals Court's conclusion that individuals in recovery from
addiction are to be considered "disabled" for purposes of § 3,
fourth par.  See Crossing Over, Inc. v.
Fitchburg, 98 Mass. App. Ct. 822, 825 (2020), and authorities cited.  See also Peabody Props., Inc. v. Sherman, 418
Mass. 603, 606 (1994) (under FHA, "drug dependency together with
. . . participation in a drug rehabilitation program" is
"handicap"); 42 U.S.C. § 3602(h) (excluding "current,
illegal use of or addiction to a controlled substance" from definition of
"handicap"); 24 C.F.R. § 100.201(a)(2) (including in definition
of "handicap" "drug addiction [other than addiction caused by
current, illegal use of a controlled substance] and alcoholism").
      Section 3, fourth par., defines
discrimination as the "[i]mposition of health and safety laws or land-use
requirements on congregate living arrangements among non-related persons with
disabilities that are not imposed on families and groups of similar size o[f]
other unrelated persons" (emphasis added). 
G. L. c. 40A, § 3, fourth par.
      Fitchburg has adopted a zoning code, and
we deal here with the version in effect as of June 8, 2018 (zoning code).[7]  The zoning code applies to all buildings or
structures in Fitchburg, and provides that "[n]o building, structure or
land shall be used for any purpose or in any manner other than is expressly
permitted within the district in which such building, structure or land is
located."  Fitchburg Zoning
Ordinance, c. 181, § 181.14 (2018).
      The zoning code divides the city into
residential, business, industrial, and institutional districts.  Fitchburg Zoning Ordinance, c. 181,
§ 181.21 (2018).  There are five
residential districts.  Id. at
§ 181.211.  At issue here is the RB
district.  The RB district allows
single-family dwellings and two-family dwellings as of right.  Id. at § 181.313.  But three-family dwellings, which are defined
as three attached dwelling units designed as the residences of three families,
require a special permit from the planning board.[8],[9]  Id. at §§ 181.10, 181.313.  Boarding houses, which are defined as
"[a] dwelling or part thereof in which lodging is provided by the owner or
operator to at least three, but not more than six, boarders," are
prohibited in the RB district.[10]  Id.
      The zoning code's definition of
"family" turns on whether a group of people are living as a
"single housekeeping unit." 
Fitchburg Zoning Ordinance, c. 181, § 181.10 (2018).  No more than four unrelated people who are
living as a single housekeeping unit may be considered a "family" for
purposes of the zoning code.  Id.  However, a group of persons "related by blood,
marriage or adoption, including wards of the state" may be deemed a family
-- regardless of their number -- if they are living as a single housekeeping
unit.  Id.
"A person or
number of persons occupying a dwelling unit and living as a single housekeeping
unit, provided that a group of five or more unrelated persons shall not be
deemed a 'family' where not related by blood, marriage or adoption, including
wards of the state."
Id.
      b. 
Factual background.[11]  BAK
Realty, LLC (BAK Realty) leases a three-unit dwelling (which the parties
colloquially refer to as a "triple decker") to Crossing Over, Inc.
(Crossing Over), a nonprofit organization that uses the property to operate a
sober house.  Crossing Over provides
all-inclusive housing for a monthly charge, and "residents receive use of
the whole house, shared living arrangements, with all utilities, TV and
amenities included."  The residents
are required to participate in random drug tests, and to attend various
meetings to promote and maintain their sobriety.
      The property is located in the RB zoning
district of Fitchburg.  In June 2019, the
sober house was occupied by thirteen unrelated people -- twelve individuals
recovering from alcohol and drug addiction, as well as one live-in manager --
who lived in a 5-5-3 arrangement across the three units.  Residents stay at the sober house for varying
periods of time, and they do not all arrive and leave on the same date.
      On June 25, 2019, Crossing Over was
notified by a Fitchburg building inspector that the sober house was functioning
as a boarding house, and that such use was not permitted in the RB district.[12]  In response, Crossing Over took the position
that G. L. c. 40A, § 3, fourth par., required the city to treat
the residents of the sober house the same as it would treat a
"family" under the city's zoning code.  Crossing Over further requested that the city
provide reasonable accommodations under the FHA "to avoid being subjected to
any code requirements not imposed upon single-family (or three single families
in this case) occupancy of this property." 
See 42 U.S.C. § 3604(f)(3)(B).
      For two reasons, the building commissioner
disagreed that the residents of the sober house were a "family" for
purposes of the zoning code.  First, he
noted that the group was not living together as a single housekeeping
unit.  Second, the commissioner stated
his belief that there were more than four unrelated people per unit.  The commissioner reiterated his view that the
sober house was operating as a boarding or lodging house -- a use that was not
permitted in the RB district.  The
commissioner further stated that he did not have the authority to provide
reasonable accommodations from health, fire, and license commission codes as
requested by Crossing Over, and he suggested that Crossing Over direct its
request for reasonable accommodations to the board.
      Crossing Over and BAK Realty heeded that
suggestion and appealed from the commissioner's decision to the board, where
they also made a request for reasonable accommodation under the FHA.  After a hearing, the board found that the
thirteen residents of the sober house were "disabled" for purposes of
§ 3, fourth par., which the board acknowledged required that they be
treated no differently from a family or other group of similar size.  But the board concluded that the residents
did not meet the zoning code's definition of "family."  The board therefore determined that the sober
house was not being operated as a three-family dwelling but rather as a
boarding house.  Because boarding houses
are not permitted in the RB district, the board upheld the commissioner's
decision.
      Notwithstanding that conclusion, the board
allowed the request for reasonable accommodation under the FHA.  In this regard, the board found that the
irregular distribution of persons across the three living units was necessary
to accommodate housing on the first floor for the live-in manager, who could
not "reasonably be expected to double-bunk with a resident."  The board also found that the presence of the
live-in manager was essential, or at least highly beneficial, to the
functioning of the recovery program.  The
board also accepted the plaintiffs' contention that the residents of the sober
house benefited from living in a large group setting rather than in divided
smaller groups.  The board noted that the
number of residents in the building was only one more than would be permitted
as the aggregate maximum allowed for three families of unrelated people living
in a three-family dwelling.[13]  The
board also found that it would be "unjust and counterproductive for the
[b]oard to insist that the thirteenth resident be immediately
evicted."  The board determined that
"[a]llowing irregular distribution across floors/units, and allowing a
single additional resident to remain over a short-term period will not
substantially nullify or derogate from the purpose of the [z]oning"
code.  Based on these findings and
conclusions, the board unanimously voted to provide a reasonable accommodation
to allow up to a total of twelve residents distributed across floors however
Crossing Over saw fit.  In other words,
the residents would not be required to conform strictly to the requirement that
there be no more than four unrelated persons living in a single unit.  The board also determined that the residents
"need not function as a 'single housekeeping unit,' in that they may begin
and terminate residency independent of one another, and may circulate freely
across floors as [Crossing Over's] program may permit."  The board further allowed the current
thirteen residents to remain in place until such time as one of them left the
program, at which time that resident would not be replaced, and the program would
continue with a maximum of twelve persons. 
Provided all its conditions were met, the board ruled that Crossing
Over's "use shall be deemed a compliant three-family dwelling for zoning
purposes."
      The plaintiffs then filed the underlying
suit in the Superior Court, seeking to annul the decision of the board because
it "fail[ed] to treat the [sober house] occupants the same as a
family."  See G. L.
c. 40A, § 17.  In addition, the
plaintiffs sought injunctive relief under G. L. c. 40A, § 3,
damages for discrimination in violation of the FHA, recovery of costs pursuant
to G. L. c. 40A, § 17, and damages for discrimination under
G. L. c. 151B.
      The plaintiffs moved for partial summary
judgment on their claim for annulment and on their claim under the FHA.  The judge allowed so much of the motion as
sought annulment of the board's decision on the ground that G. L.
c. 40A, § 3, "requires that the disabled residents of the
property not be subject to any local ordinance requirement that would not be
imposed on families -- e.g., a housing unit of four or more related individuals
-- and groups of similar size o[f] other unrelated persons, whichever is more
favorable."  On this basis, the
judge concluded that G. L. c. 40A, § 3, barred enforcement of
the zoning code against the residents of the sober house.  She accordingly allowed the plaintiffs'
motion for summary judgment in part and annulled the board's decision.  The parties then agreed to the dismissal of
the plaintiffs' remaining claims.  This
appeal followed, in which the only issue is the judge's ruling annulling the
board's decision that the sober house was not being used as a three-family
dwelling but rather as a boarding house.
      2. 
Discussion.  The root of the
plaintiffs' position on appeal is that § 3, fourth par., requires that disabled
persons living in congregate living arrangements be treated as
"families" regardless of how that term is defined at the local
level.  They base this view on their
reading of the statute, which they contend requires that groups of unrelated
disabled people living in a congregate setting be treated as both a
"family" as well as any other similar-sized group of nonrelated
persons.  In other words, the plaintiffs
contend that such persons must be given "family" status even if they
do not meet the local definition of that term and even if the local code treats
them like similar-sized groups of nonrelated persons.
      We disagree for two reasons.  First, § 3, fourth par., does not
preempt municipalities from defining what constitutes a "family" for
purposes of their local zoning codes. 
Cf. Roma, III, Ltd. v. Board of Appeals of Rockport, 478 Mass. 580, 581,
591-592 (2018) (State law did not preclude municipality from prohibiting use of
land for private heliport where there was "no clear legislative intent to
preempt local zoning enactments"). 
Second, § 3, fourth par., does not require that groups of unrelated
disabled persons living together be treated the same as both families and
similar-sized groups of nondisabled unrelated persons.  Instead, they must be treated the same as any
comparable group of unrelated persons, whether that is a "family" as
the term is defined on the local level, or some other similar-sized group of
unrelated persons under the local code.
      a. 
Local definition of "family." 
As we have already noted, § 3, fourth par., does not define
"family" or "families," nor are those terms defined
elsewhere in G. L. c. 40A. 
Instead, consonant with its general delegation of zoning authority to
the local level, the Legislature has left it to each municipality to define the
term "family" for purposes of its own zoning code.  See Zoning Bd. of Appeals of Wellesley v.
Ardemore Apartments Ltd. Partnership, 436 Mass. 811, 822 n.22 (2002) (Legislature
has delegated almost all of its constitutional zoning authority to cities and
towns, and "[G. L.] c. 40A, itself expressly recognizes local
autonomy in dealing with land use and zoning issues").  This delegation does not mean that a
municipality is entirely unrestrained in how it may define the term "family."  But, as long as the local definition is
constitutionally permissible and does not run afoul of the Zoning Act or other
controlling legislation, a city or town may define "family" in a
manner that will help preserve the residential character of its
neighborhoods.  See Styller v. Zoning Bd.
of Appeals of Lynnfield, 487 Mass. 588, 599 (2021); Zuckerman v. Hadley, 442
Mass. 511, 517 (2004); Sturges v. Chilmark, 380 Mass. 246, 253 (1980).
      The plaintiffs do not contend that
Fitchburg's definition of "family" runs afoul of these
constraints.  Nor do they argue that the
city could not permissibly draw a distinction between the number of unrelated
people (such as, for example, college students) living together as a single
housekeeping unit who may be deemed a "family" under its zoning code
and the unlimited number of related persons who may be so deemed.  Because authority to define the term
"family" has been delegated to the local level, and no argument has
been made that Fitchburg's definition is impermissible, the sober house
residents were required to meet the local definition.
      What remains is whether the board
permissibly concluded that the residents of the sober house did not meet the
definition of "family" and that Crossing Over was operating a
boarding house.  See Shirley Wayside Ltd.
Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012) (we
"accord deference to a local board's reasonable interpretation of its own
zoning bylaw").  The residents do
not live as a single housekeeping unit within each unit.  Instead, the residents live across the
building as a whole, with Crossing Over providing group services and amenities,
as well as a live-in manager, in exchange for rent.  Beyond that -- whether considered on a
unit-by-unit basis or taking the building as a whole -- the residents exceeded
the number of unrelated people who can be deemed a "family" under the
zoning code.  Accordingly, the board was
permitted to conclude that the sober house was not being used as a three-family
house, but was instead being used as a boarding house -- a use not permitted in
the RB district.
      b. 
Meaning of "and" in § 3, fourth par.  As we have already noted, § 3, fourth
par., provides that discrimination occurs when local land-use requirements
imposed "on congregate living arrangements among non-related persons with
disabilities" are "not imposed on families and groups of similar size
o[f] other unrelated persons" (emphasis added).  G. L. c. 40A, § 3, fourth
par.  In other words, the provision tests
for discrimination by comparing the treatment of unrelated disabled persons to
the treatment of two other groups: 
families and similar-sized groups of unrelated people.  The question here is whether § 3, fourth
par., requires cities and towns to treat unrelated disabled persons the same as
both of those groups, or if it only requires the same treatment as given to one
of those groups -- either families, or groups of similar size of other
unrelated persons -- that is alike but for disability.  Both readings are permissible and plausible
as a matter of grammar.  However, we
conclude that only the latter interpretation comports with the legislative
purpose of § 3, fourth par., to prohibit discrimination against disabled
persons.  See Reade v. Secretary of the
Commonwealth, 472 Mass. 573, 578 (2015), cert. denied, 578 U.S. 946 (2016),
quoting Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass.
106, 113 (1995) ("reading of a statute should not be adopted if the result
will be to thwart or hamper the accomplishment of the statute's obvious
purpose, and if another construction which would avoid this undesirable result
is possible").
      We first set out each of the parties'
textual interpretations.  On the one
hand, the plaintiffs contend that the word "and" is used in its joint
sense, and therefore links families and "groups of similar size o[f] other
unrelated persons" so that discrimination occurs when disabled individuals
are not afforded the same treatment as both groups.  G. L. c. 40A, § 3, fourth
par.  See B.A. Garner, Dictionary of
Legal Usage 639 (3d ed. 2011) (word "and" has "a joint
sense").  On the other hand, the
defendants contend that the word "and" is used in its distributive
sense.  See id. ("and has a
distributive [or several] sense"). 
When used in its distributive sense, the word "and" impliedly
repeats or distributes a preceding word or phrase to each item in a list.  See Bradley v. Board of Zoning Adjustment of
Boston, 255 Mass. 160, 173 (1926) (explaining that "seven specified
grounds [for when a board can alter a zoning map]" that are joined by word
"and" were "intended to be used distributively and not
conjunctively").  See also Pulsifer
v. United States, 601 U.S. 124 (2024). 
If § 3, fourth par., uses "and" in its distributive
sense, then the phrase "not imposed on" implicitly repeats before
each of the two groups identified in the provision, so that discrimination
occurs when a restriction imposed on nonrelated people with disabilities is
"not imposed on families and [not imposed on] groups of similar size o[f]
other unrelated persons." 
G. L. c. 40A, § 3, fourth par.  See Pulsifer, 601 U.S. at 136, citing R.
Huddleston & G.K. Pullum, The Cambridge Grammar of the English Language
1298-1299 (2002).  Under this reading,
discrimination does not occur provided the municipality imposes the same
requirements on "congregate living arrangements among non-related persons
with disabilities" as it does on either families or on similar-sized
groups of unrelated persons.  G. L.
c. 40A, § 3, fourth par.
      We look to the context in which
"and" appears in order to determine whether it is used in its joint
or in its distributive sense.  Pulsifer,
601 U.S. at 134-135.  That context is
§ 3, fourth par., which prohibits municipalities from using local
"land use and health and safety laws, regulations, practices, ordinances,
by-laws and decisions" to discriminate against disabled people.[14]  G. L. c. 40A, § 3, fourth
par.  The plain language of § 3,
fourth par., prohibits discriminatory treatment; it does not mandate
preferential treatment under local zoning regulations.  See Automobile Insurers Bur. of Mass. v.
Commissioner of Ins., 425 Mass. 262, 267 (1997), quoting Industrial Fin. Corp.
v. State Tax Comm'n, 367 Mass. 360, 364 (1975) ("Where the [legislative]
intent is clear, the statute, if reasonably possible, must be construed to
carry out that intent"). 
Nondiscriminatory treatment of disabled persons is consistent with one
of zoning's over-all purposes, which is to "stabilize property uses in [a
municipality's] specified districts." 
Moore v. Cataldo, 356 Mass. 325, 327 (1969), quoting Kane v. Board of
Appeals of Medford, 273 Mass. 97, 104 (1930). 
Treating groups of disabled people who live in congregate living
arrangements differently from other similar-sized groups of nondisabled persons
in the same type of living arrangement within the same district would run
counter to that stabilizing purpose.  It
would also undermine municipalities' ability to use zoning regulations "to
protect communities' 'residential character'" (citation omitted).  Styller, 487 Mass. at 599.
      Against this context, we conclude that the
word "and" is used in its distributive sense.  Thus, local zoning regulations do not run
afoul of § 3, fourth par., unless they impose requirements on groups of
unrelated disabled persons in a congregate living arrangement that are not
imposed on families or on similar-sized groups of nondisabled unrelated
persons.  That is not the case here.  The residents of the sober house were subject
to the same requirements for "families" as well as for similar-sized
groups of nondisabled unrelated persons (in this case, a "boarding
house").
      3. 
Conclusion.  Because Fitchburg's
zoning code did not impose on the residents of the sober house any requirements
that were neither imposed on "families" nor imposed on similar-sized
groups of unrelated persons, we reverse the judgment of the Superior Court.
So ordered.
 
footnotes
 
[1] Crossing
Over, Inc.
 
[2] Zoning board
of appeals of Fitchburg.
 
[3] It is
apparent that the word "or" is a clerical or scrivener's error that
should instead read "of." 
Congress's report on the Fair Housing Act -- which appears to be the
source from which the language of § 3, fourth par., was drawn -- uses
"of" instead of "or," thus lending credence to the idea of
clerical error.  See H.R. Rep. No.
100-711, 100th Cong., 2d Sess., at 24 (1988) ("[Discrimination] has been
accomplished by such means as the enactment or imposition of health, safety or
land-use requirements on congregate living arrangements among non-related
persons with disabilities.  Since these
requirements are not imposed on families and groups of similar size of other
unrelated people, these requirements have the effect of discriminating against
persons with disabilities" [emphasis added]).
 
[4] We
acknowledge the amicus briefs submitted by the Massachusetts Municipal Lawyers
Association; and the cities of Brockton, New Bedford, Taunton, and Fall River.
 
[5] As a result
of the amendment, the FHA prohibits discrimination in the sale or rental of
housing against "handicapped" persons, including discrimination by
"a refusal to make reasonable accommodations in rules, policies,
practices, or services, when such accommodations may be necessary to afford
[handicapped] person[s] equal opportunity to use and enjoy a
dwelling."  42 U.S.C.
§ 3604(f)(3)(B).
 
[6] "General
Laws c. 40A, § 3, was originally enacted to prevent municipalities
from restricting educational and religious uses of land, see St. 1975,
c. 808, § 3, but the Legislature has expanded G. L. c. 40A,
§ 3, over time to ensure that other land uses would be free from local
interference."  Crossing Over, Inc.
v. Fitchburg, 98 Mass. App. Ct. 822, 829 (2020) (citing legislative history).
 
[7] The 2018
zoning code was "enacted for the purpose of promoting the health, safety,
convenience and general welfare of the present and future inhabitants of the
City of Fitchburg and to:  
   1. Lessen congestion in the streets.
   2. Secure safety from fire, flood, panic and
other dangers.
   3. Provide adequate light and air.
   4. Prevent overcrowding of land.
   5. Avoid undue concentration of population.
   6. Encourage housing for persons of all income
levels.
7. Facilitate the
adequate provision of transportation, water, water supply, drainage, sewerage,
schools, parks, open space and other public requirements.
8. Conserve the
value of land and buildings, including the conservation of natural resources
and the prevention of blight and pollution of the environment.
9. Encourage the
most appropriate use of land throughout the city.
10. Preserve and
increase amenities by the promulgation of regulations to fulfill said
objectives.
11. Facilitate
the safe, convenient and meaningful provision of adequate vehicular and utility
access to all lots intended for building purposes in the City."
Fitchburg Zoning
Ordinance, c. 181, § 181.11 (2018).
 
[8] "Special
permits may be issued only for uses which are in harmony with the general
purpose and intent of the ordinance or by-law, and shall be subject to general
or specific provisions set forth therein; and such permits may also impose
conditions, safeguards and limitations on time or use."  G. L. c. 40A, § 9, first par.
 
[9] Prior to July
7, 2004, the zoning code allowed three-family dwellings as a matter of right in
the RB district.  Fitchburg Zoning
Ordinance, c. 181, § 181.313 (2018). 
The record is silent as to whether the building in which the sober house
is operated was built before the 2004 amendment.  That said, there is no issue raised about the
conformity of the structure itself with the code.  The only issue is about the building's use.
 
[10] The 2020
amended zoning code modified the definition of "boarding house" to 
"A building,
structure or a portion thereof where lodgings are let to more than three, [sic]
persons not within the second degree of kindred to the person conducting it and
shall include fraternity houses and dormitories of educational
institutions.  The term includes student
housing owned by non-governmental persons or persons or entities.  The definition does not include inns, bed and
breakfast establishments, or any hospital, sanitorium, convalescent or nursing
home, infirmary or boarding home for the aged licensed by the Department of
Public Health or any dwelling licensed, authorized or regulated by the
Department of Mental Health or any other agency of the Commonwealth or United
States."
Fitchburg Zoning
Ordinance, c. 181, § 181.10 (2020). 
Compare G. L. c. 140, § 22 (definition of "lodging
house"); G. L. c. 148, § 26H (definition of "lodging
or boarding houses").
 
[11] The facts
are undisputed.  We draw our recitation
from the parties' joint appendix submitted in connection with the plaintiffs'
motion for summary judgment, and from the findings of the board.
 
[12] Crossing
Over was also notified that it needed to obtain a lodging house license from
the board of health, and that an accessible route for the building would need
to be created.  These issues are not
implicated in this appeal.
 
[13] This is
because four unrelated persons could live together as a "family" in
each unit as a matter of right under the code, resulting in a total of twelve
people living in the building.  See
Fitchburg Zoning Ordinance, c. 181, §§ 181.10, 181.313 (2018).
 
[14] The title
and language of St. 1989, c. 106, § 1, which added § 3, fourth
par., to the Zoning Act, make clear that the legislative intent was to target
discrimination based on disability. 
Specifically, c. 106 is entitled "An Act prohibiting housing
discrimination against disabled persons," and § 1 only mentions
discrimination against disabled persons. 
See Lynn Teachers Union, Local 1037, AFT, AFL-CIO v. Massachusetts
Comm'n Against Discrimination, 406 Mass. 515, 524 (1990), abrogated on other
grounds by Clifton v. Massachusetts Bay Transp. Auth., 445 Mass. 611, 620
(2005) ("title and provisions of [act]" that "refer[] explicitly
only to age discrimination" demonstrate "the intent of the
Legislature to focus exclusively on the problem of age discrimination").